## ALMON BENTON v. EDWARD NASON, *et al.*

1. COUNTY-SEAT LOCATION; *Sufficient Petition.* Where two petitions are at the same time presented to the county board, the language of one of which is for "permanently *relocating* the county seat," and that of the other for "permanently *locating* the county seat," *held*, that both petitions are sufficient under the county-seat-location law, and that the mere verbal difference between the two does not vitiate either.

2. GENERAL COUNTY-SEAT-LOCATION LAW, *Operative.* Notwithstanding that the county seat of Pottawatomie county was established by virtue of an election ordered by a special act of the territorial legislature, (Laws of 1861, ch. 9, p. 11,) and another special act declaring the result of said election, (Laws of 1862, ch. 65, p. 449,) the county is within the scope of and subject to the provisions of the general county-seat-location law. (Comp. Laws 1879, ch. 26, p. 313.)

3. COUNTY BOARD, *Action Against; Practice.* When a suit is brought against the county commissioners involving their official action and affecting the public interests, and there is a change in the membership of the board, it is right and proper to permit a corresponding change in the defendants to the action, making such defendants the incoming board of commissioners.

4. PRACTICE; *No Error.* Where a petition is filed in the district court challenging the proceedings of the county commissioners ordering a county-seat election, and the charge in the petition is substantially that the commissioners have ordered such election without any petition therefor, *held*, that the district court did not err upon the trial of such

action, after the introduction in evidence of petitions to the county board, in refusing to permit plaintiff to show that some of the names to such petitions are not the names of legal electors, or that other signers had requested a withdrawal of their names before any action of the county board, or other matters tending to impeach the sufficiency of the petition and the genuineness of the signatures thereto.

*Error from Pottawatomie District Court.*

ACTION brought by *Benton* against *Nason* and two others, as commissioners of Pottawatomie county, to restrain the canvass of the votes or any declaration of the result of a certain county-seat election. Trial at the adjourned March Term, 1881, of the district court, and judgment for the defendants and against the plaintiff, who brings the case here. The opinion states the facts.

*R. S. Hick, J. B. Johnson,* and *A. H. Case,* for plaintiff in error.

*John Martin, D. V. Sprague,* and *C. P. Jeffries,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: On the 20th day of August, 1879, the board of county commissioners of the county of Pottawatomie ordered that an election be held on the 23d day of September, 1879, for the purpose of permanently locating the county seat of that county. At the day named the election was held, and the returns made to the county clerk, by which returns it appeared that of the four places voted for, Wamego and Westmoreland received the highest number of votes, and no place receiving a majority of all. Before any canvass of the vote at such election, the plaintiff in error, plaintiff below, obtained a temporary order of injunction restraining any canvass of the votes or any declaration of the result of the election. The temporary injunction thus obtained continued till June 27th, 1881, when upon a final trial it was dissolved, and judgment entered for the defendants. This judgment plaintiff in error seeks to review by this proceeding.

Benton v. Nason.

Several questions are presented, and yet in none of them do we see anything prejudicial to the rights of plaintiff in error, or which justifies us in disturbing the decision of the lower court. The first question that arises is, on the language of the petitions filed with the county commissioners. One petition was for permanently relocating the county seat; the other was for permanently locating the county seat. Neither petition by itself had sufficient names. Counsel insist that the statutes prescribe the form of the petition, which must be strictly followed. In this they are mistaken; the statute gives no form, but simply declares that upon petition of a certain number of the legal electors the commissioners shall order an election for the relocation of the county seat. All that is necessary is, that the petition should distinctly express, in one form of language or another, the wish of the petitioners; and upon that expressed wish it is the duty of the commissioners to act.

1. County-seat location; sufficient petition.

A second proposition is, that Pottawatomie county is outside the reach of the general county-seat law, because its county seat had been established by special act of the legislature. The facts are these: At the last session of the territorial legislature an act was passed, providing that the electors of Pottawatomie county should first vote upon the question of then determining the location of the permanent county seat; and if a majority voted in favor of making such determination, then a second election should be had for selecting the place for the county seat. In 1862 an act was passed by the legislature, which recited that the result of the elections held under the prior act was that Louisville received a ma jority of the votes, and was thereby declared and established the permanent county seat of Pottawatomie county. Does the fact that the county seat was thus established take this county outside the scope of the general act concerning the removal and location of county seats? We think not. The act of 1862, if valid at all, was nothing more than a legislative declaration of the result of an election. It was a canvass by the legislature. The

2. General county-seat law, operative.

election made the location, and not the mere canvass of the votes, or declaration of the result. Even if it were simply and absolutely a legislative selection of the county seat, it would not thereby take the county outside the scope of the general statute. The language of that statute is broad and inclusive. It includes every county, no matter under what circumstances its county seat has been located, or what buildings have been erected at the county seat. In the early history of the state and territory, many county seats were located by special acts, or in pursuance of elections directed by special acts; but in 1868 this general act was passed, covering all cases, and providing for any subsequent change in a county seat. There is nothing in the prior legislation concerning Pottawatomie county which takes that county outside the general scope of this statute.

Again, when the petition for an injunction was filed in this case, the then county commissioners filed an answer confessing everything, and upon that a temporary injunction was ordered. Before the case came to final trial the terms of office of two of the commissioners had expired, and on application their successors were substituted as parties defendant, and permitted to file an answer, which they did, denying the charges in the petition. Of this action of the court plaintiff complains. We think it eminently right and just. The action was an action, not against the county commissioners as individuals, but against them in their official capacity, and to restrain official action. Whenever there was a change in the members of that board, a change in the persons of the defendants was 3. Action against county board. proper, in order that they who at the time represented the county in its official capacity and had the charge of its general affairs, should be enabled to control among other things this litigation concerning county matters. If the change in parties or change in answer necessitated further delay on the part of the plaintiff, it might have been asked, and would doubtless have been granted. Certainly the matter of delay was the only matter in which plaintiff could claim any consideration.

The final question is this: The petition for an injunction alleged that "No petition nor any petition, signed by three-fifths of the legal electors of said county, has ever been presented to the commissioners of said county for the ordering of or in any manner or form asking, requesting or petitioning said board to order an election for the relocation of the county seat of said county." And then it goes on to charge that on the 20th of August, 1879, the board of commissioners illegally and fraudulently, without any authority therefor, ordered an election. Upon the trial, after the petitions filed with the county board had been offered in evidence, the plaintiff offered testimony tending to show that some of the names upon the petitions were the names of persons not residents or legal electors in the county; that others whose names had been signed had, before any action of the county commissioners thereon, requested to withdraw their signatures, and testimony in other manners tending to impeach the legal sufficiency of the signatures to such petitions. Upon objection, the court declined to receive such testimony. No application was made for leave to amend the petition, and the testimony offered was never received. Was this ruling erroneous?

4. Practice; no error. With some hesitation we answer this question in the negative. The plain intimation of the charge in the petition is, that there was a total absence of any petition. That issue the defendants were invited to meet; that issue they might be expected to be prepared for on the trial. When the plaintiff, after petitions are shown, asks to prove that those petitions are insufficient or defective, he suggests a matter in respect to which the charge in the petition gives no notice or intimation to the defendants. They would not be advised beforehand that the plaintiff charged anything more than the non-existence of any petition, and would not be led to suppose that plaintiff, with full knowledge of the existence of a petition, meant simply to charge that it was insufficient; or if that he complained of its insufficiency, whether that insufficiency consisted in the form of the petition, the lack of names, the fact that certain names were by

the signers requested to be withdrawn, or that some of the names signed were the signatures of non-residents, or other unauthorized persons. They could not be expected to prepare against all possible objections which might be made to a petition apparently sufficient both in the form and the number of signatures. The complaint was, that there was no petition; that issue they must get ready to meet, and not the further and unnamed issue whether the petition upon which they acted was defective in form and unsustained by the genuine signatures of proper electors. Doubtless if plaintiff had asked leave to amend his petition on the trial, it would have been granted, though the defendants, if not ready, would have been entitled to a continuance. But as no application to amend was made, the case must be considered upon the issue as it was presented in the pleadings, and upon that issue we think the ruling of the court is correct.

There being no other matters to consider, the judgment of the district court must be affirmed.

HORTON, C. J., concurring.

VALENTINE, J.: I concur in both the syllabus and opinion delivered in this case, except that I have great doubts as to the correctness of the last paragraph of the syllabus, and of the conclusions reached in the last portion of the opinion. These relate to the exclusion of evidence under the pleadings. The plaintiff's petition alleged, among other things, that "no petition nor any petition signed by three-fifths of the legal electors of said [Pottawatomie] county has ever been presented to the board of county commissioners of said county," asking for an election for the relocation of the county seat of said county, and that the "county commissioners illegally, fraudulently and without authority adopted and made an order" for such an election. The defendants' answer was a general denial. While I think the court below might have permitted the plaintiff under the pleadings to introduce evidence tending to show that the petition which was actually presented to the county commissioners and which appeared

upon its face to be sufficient, was not, in fact, sufficient, for reasons not shown upon the face of the petition, yet I can hardly say that the court below was bound to admit any such evidence, and unless I could say that the court below was bound to admit such evidence, I cannot say that the court below erred in excluding it. The exclusion of evidence under such circumstances will, however, have this good effect: it will make the parties state in their pleadings the facts of their case in clear and explicit language, and as the facts actually occurred.