[No. 1893.  Decided November 29, 1895.]

JOHN C. STALLCUP, *Appellant*, v. THE CITY OF TACOMA, *Respondent*.

JUDGMENT—RES JUDICATA—JUDICIAL NOTICE OF RECORDS OF APPELLATE COURT—ELECTIONS—REGISTRATION—MUNICIPAL CORPORATIONS—ISSUANCE OF BONDS—VALIDITY.

An appellate court will take judicial notice of its records and of what issues were presented for determination by the record in a given cause, and will not consider an allegation of a complaint that certain questions were not presented for determination upon appeal in another action, when it appears from an inspection of its records that such allegation is unfounded.

A decision of the supreme court determining the legality of municipal bonds, in an action by a taxpayer in behalf of himself and all others similarly situated to restrain the city from issuing the bonds, is, in the absence of fraud or collusion, conclusive of their validity in a subsequent action by another taxpayer to restrain the city from paying interest thereon, especially when it appears from the records in the former action that the same questions involving the legality of the bonds were presented to the consideration of the court in both actions.

The right to vote in this state at any election, general or special, resides in those possessing the qualifications prescribed by § 1, art. 6,

of the constitution, subject to reasonable legislative provisions respecting registration and regulating the exercise of the right; and the failure of the legislature to make provision for registration, as required by §7, art. 6, of the constitution, will not operate to invalidate any election held without such registration.

The motives which induced voters to authorize the issuance of municipal bonds for the purchase of a light and water plant cannot be inquired into by the courts, when the propriety of becoming indebted for such purposes has been committed to the voters by the constitution and statutes of the state.

A decree adjudicating that negotiable municipal bonds are invalid is of no effect as against holders for value before maturity, who are strangers to the record.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge.    Affirmed.

*Ben. Sheeks, Frank H. Graham*, and *A. R. Titlow*, for appellant.

*James Wickersham*, and *Stacy W. Gibbs* ( *Crowley, Sullivan & Grosscup*, of counsel,), for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was brought by the appellant, a citizen and taxpayer of the city of Tacoma, for himself and all others similarly situated, against the respondent city to enjoin it from paying the interest on 1,750 negotiable, interest bearing bonds of the denomination of $1,000.00 each, said bonds having been issued by the respondent city and delivered to one C. B. Wright and to the Tacoma Light and Water Company, a corporation, (of which said corporation the said Wright is the principal stockholder), in exchange for a certain light and water plant, water supply and equipment.

The lower court having sustained the demurrer of the respondent to appellant's complaint, and the appellant having elected to stand by his pleading, judg-

ment was rendered below dismissing said action, from which judgment and from the order sustaining said demurrer this appeal is prosecuted. The complaint is very voluminous, comprising some twenty-one closely type-written pages. The conclusion reached by us renders it unnecessary to consider many allegations contained in it. Appellant assails the validity of the bonds for two principal reasons; 1st, because the election at which the voters of the city authorized their issuance was held without any registration, contrary to the provisions of the constitution of the state, and 2nd, that the aggregate amount of the bonds authorized at the election so held, was in excess of the limit of indebtedness fixed by the constitution.

This is the third case which has been before this court involving the legality of said election. The first case was that of *Seymour v. City of Tacoma and the Tacoma Light and Water Company*, and is reported in 6 Wash. 138 (32 Pac. 1077); the second cause was between the same parties, and is reported in 6 Wash. 427 (33 Pac. 1059). The first of these cases was instituted prior to the time of holding the election, and for the purpose of having the ordinance which provided for the submission of the proposition to the voters adjudged invalid and void, and for the further purpose of enjoining and restraining the city and its officers from calling or holding said election, and from expending the funds of said city for that purpose. The second cause was instituted subsequent to the election, but prior to the issuing of the bonds. Its purpose was to enjoin the city and its officers from issuing said bonds, or from attempting to obligate said city for the payment thereof. Each of said causes was prosecuted by the plaintiff as a citizen and taxpayer in his own behalf, and in behalf of all other taxpayers

of the city similarly situated.   In the first case above referred to, this court construed the ordinance under which the proposition to purchase the plant and issue said bonds was submitted to the legal voters of said city; also, the act of the legislature of March 26, 1890, authorizing cities to purchase water works and light plants; and upon the subject of registration the court then said:

" We  have  but  one  registration  law  in  this state, which is found in ch. 8, Gen. Stat.    Section 467 declares that the provisions of the law shall  apply  to  all elections for municipal and other *officers*; but we fail to find any application of it to elections of this kind. Section 9 of the charter [of respondent city] requires registration 'as  provided  by  the  general  laws  of  the state'; and § 13 declares that no person shall be entitled to vote unless he is a qualified elector under the state laws, and has registered 'as provided by law.' *But there being no state law requiring registration at elections of this character, these provisions of the charter are inoperative, and any elector can vote.*"

In referring to what was said by this court in that case, the learned counsel for the appellant herein say in their brief, " The  court very properly decided that the registration statutes did not apply to elections of that character," and in appellant's complaint in this case it is alleged that " The legislature of the State of Washington has passed no law by which said pretended election (for voting on issuing bonds) could be held," because of its failure to make provision for registration.    But appellant insists that the opinion in that case relating to registration was based on the statute alone, and that the counsel for the respective parties to that litigation suppressed the true facts in that case, and that the provision of the constitution

of this state upon the subject of registration was not called to the attention of the court.

The provision of the constitution referred to is § 7, art. 6, and is as follows:

" The legislature shall enact a registration law, and shall require a compliance with such law before any elector shall be allowed to vote; *provided,* that this provision is not compulsory upon the legislature, except as to cities and towns having a population of over 500 inhabitants.    In all other cases the legislature may or may not require registration as a prerequisite to the right to vote, and the same system of registration need not be adopted for both classes."

It is conceded that said city of Tacoma now has, and at the time of the election herein referred to and for many years prior thereto had, a population exceeding 25,000.    The appellant further insists that inasmuch as the legislature of the State of Washington has not made provision for registration for elections of this character *there is no constitutional basis or authority for holding such an election,* and that the bonds for that reason are absolutely void.    The *Seymour case* first above cited was decided by this court before the bonds, which appellant here seeks to have adjudged invalid, were issued, and if the question we are now discussing were the sole and controlling question in the decision of this case, we should, in view of the fact that bonds of the city negotiable in form were thereafter issued, hesitate before promulgating a decision discrediting said bonds, for any reason which existed at the time when said former case was pending and which it would have been the right of parties to have urged therein.

This court will take judicial notice of its records and of what issues were presented for determination by the record in a given cause, and will not entertain

10—13 WASH.

or consider an allegation of the character contained in paragraph 7 of the complaint herein, when it appears from an inspection of such record that the matters so alleged are unfounded.

Many of the allegations of the complaint herein relate to questions which were distinctively raised in the pleadings in the *Seymour cases* above cited, and extended arguments were made upon them in briefs of counsel therein, and such questions have been disposed of by this court in rendering judgment in said cases.

The contention of counsel that the constitutional necessity for registration was not urged upon the court's attention in the first *Seymour case* is unfounded. An inspection of the briefs in that case discloses that the question was discussed, and fourteen pages of the brief of the respondent therein, were entirely devoted to the discussion of the claim that registration was essential to the validity of the then proposed election,— said discussion treating of constitutional, as well as statutory, requirements,— and while it is true that mention of the constitutional provision is not made in the opinion of the court in that case, it does not follow that it did not receive the consideration of the court. The rule is that

"A decision once made in a particular controversy, by the highest court empowered to pass upon it, is conclusive upon the parties to the litigation and their privies, and they are not allowed afterwards to revive the controversy in a new proceeding for the purpose of raising the same or any other questions. . . . Whatever the question involved, whether the interpretation of a private contract, the legality of an individual act, or the validity of a legislative enactment, the rule of finality is the same." Cooley, Constitutional limitation (5th ed.), p. 58.

It is true that the appellant was not a nominal party in *Seymour v. Tacoma, supra,* still it is also probably true that as a taxpayer he could not be heard to urge any objecton to the validity of the bonds that could not be urged by the city, were the controversy between it and the holder of the bonds. And it is familiar law that a judgment bars not only every defense actually raised or set up in the action, but also every other defense which might have been urged therein. *Cromwell v. County of Sac,* 94 U. S. 351; *Burlen v. Shannon,* 99 Mass. 200 (96 Am. Dec. 733); *Howard v. City of Huron,* 60 N. W. 803; Herman, Estoppel and Res Judicata, § 121.

And we think there is little reason and less authority for excepting municipal authorities from this general rule.

We do not mean to be understood as holding that parties are to be concluded by decisions obtained by others in fictitious controversies, or, as a result of fraud and collusion, or where an imposition has been practiced upon the court.

But, as already noticed, the *Seymour cases* were brought by a taxpayer in behalf of himself and all others similarly situated, the city was the principal defendant there, as it is the sole defendant here, and there is identity in the subject matter of the litigation. In the first of said cases it was urged that the ordinance passed by the city authorities for submitting the propositions to purchase the plant and to issue the bonds, which ordinance was set out in the complaint in that action, was void, and an injunction was asked restraining the officers of the city from calling an election to submit said propositions to the legal voters of the city, because of the alleged invalidity of the or-

dinance. This court on appeal held the ordinance valid and effectual.

In the second case, brought after the result of the election on the propositions so submitted to the electors had been declared, but prior to issuing the bonds, an injunction was sought for the purpose of restraining the city and its officers from issuing the bonds because of the illegality of the election and the invalidity of the bonds. The recitals expressed upon the face of the bonds were set out in the complaint, which complaint also contained the allegation that "the debt to be incurred by the issuance of said bonds . . . will be more than five per centum (the limit of indebtedness as fixed by the constitution) of the taxable property in said city as ascertained by the last assessment made for city purposes." This court upon appeal held that the proceedings attending the election were regular, and that the bonds (excepting only as to $70,000, which the court authorized to be deducted from the total amount to be issued) did not exceed the limit of indebtedness imposed by the constitution. Necessarily, the question of the validity of the bonds involved in this controversy was decided in that case. *Gallaher v. City of Moundsville*, 34 W. Va. 730 (12 Am. St. Rep. 942; 12 S. E. 859.)

We do not think that the complaint in this action charges such fraud in the conduct of the cases herein referred to as the *Seymour cases* as will operate to defeat the binding effect of the decisions rendered therein. For that purpose, we think the allegations of the complaint wholly insufficient, and especially so when considered in connection with what is disclosed by the records of this court.

But if we adopt the view that appellant has taken with regard to this court's decision in the first of the

so-called *Seymour cases*, and proceed to the investigation and determination of this constitutional question, uninfluenced by anything determined in that case, we think that the contention of counsel, that no election for the purpose of issuing bonds can legally be held in a city or town of this state, having a greater population than 500 inhabitants, because of the failure of the legislature to make provision for the registration of voters at such election, is not well founded. The case differs widely from one where the legislature has made provision for registration and parties neglect to comply therewith. We think that the prohibition of the constitution against voting does not apply until after a registration law has been passed, and a compliance therewith made possible to the voter. If we are right in this view, it is easy to understand why it was not deemed pertinent to make mention of the constitution in the first *Seymour case*. But we think that additional reasons may be adduced to demonstrate the unsoundness of appellant's construction of art. 6, § 7, of the constitution. By reference to to that section, it will be seen that if registration is a *sine qua non* to the right to vote at an election of this character, the same would be true at all elections — general as well as special — elections held for the purpose of choosing state, county, or city officers, as well as elections of the character here in question.

"Constitutional provisions concerning the qualifications of voters apply to all elections, whether general or special." McCrary, Elections, § 14; *People v. Canaday*, 73 N. C. 198 (21 Am. Rep. 465).

Hence, if appellant's position is well taken, the conclusion necessarily is that, had the legislature entirely failed to pass any registration law, (instead of merely passing a law requiring registration at elections for

state and other officers)—an election of any character within this state, or at least within towns and cities having a population exceeding five hundred — would have been legally impossible, *inasmuch as the constitutional provision has reference to elections of the one kind as well as the other,* and, until the legislature made provision for registration, no election for any purpose could be legally held. If this be the correct view of the constitution, we might well inquire, how (after the adoption of the constitution) was an election possible? We were then without a registration law, and, according to appellant's contention, could hold no election until one was passed. Without a legislature (the members of which the constitution required to be elected) no registration law could be passed, and without a registration law no legislature could be elected. *Reductio ad absurdum.* By parity of reasoning all cities and towns in the state containing a population exceeding five hundred should have been excluded from participating in the election held for selecting members of congress and state officers, and putting the machinery of the state government in motion.

In construing a provision of the constitution, as well as in the construction of a statute or contract, regard must be had to its several provisions and all of its parts. If any part of it be susceptible of two constructions, that one should be adopted which will not only best harmonize with other provisions, but also give effect to every agency which is provided by it to make the state government effective. Sec. 1, art. 6 of the constitution provides that "All male persons of the age of twenty-one years or over, possessing the following qualifications *shall be entitled to vote at all elections* . . ." and while it may be that

§ 7, art. 6, *supra*, is binding upon the conscience of
the legislature and imposes the duty of acting, *never-
theless*, the failure to act ought not to be construed so
as to deprive the citizen, possessing the qualifications
prescribed by § 1 of that article, of his constitutional
right to vote. It would of course be competent for
the legislature — either with or without constitutional
mention of the subject — to provide by appropriate
legislation for testing the voters' right, and preserv-
ing the purity of the ballot, but " When the constitu-
tion prescribes the qualifications, whoever possesses
them has a constitutional right to vote, and of this
right he cannot be deprived by legislative enact-
ment." McCrary, Elections, § 17.

Our conclusion is that the right to vote in this state
at any election, general or special, resides in those
possessing the qualifications prescribed by § 1, art. 6,
of the constitution, subject only to compliance with
such reasonable provisions respecting registration
and regulating the exercise of the right, as the legis-
lature may provide, but the mere failure or neglect of
the legislature to make any provision for registration
does not operate to deprive those having the qualifi-
cations of the constitution from exercising the elective
franchise.

Concerning the other objection above noticed, viz.,
that the amount of bonds authorized at the election
was in excess of the limit of indebtedness fixed by the
constitution, little need be said. As already noticed
that question was directly involved in the second
*Seymour case*, 6 Wash. 427, where it received the ex-
tended consideration of this court, and was directly
passed upon. For this reason we decline to consider
it further. Respondent contends, and we think justly,
that parties purchasing such bonds have a right to

rely upon the law as declared in these decisions, and such has been the repeated holding of the supreme court of the United States. *Lee Co. v. Rogers*, 7 Wall. 181; *Harshman v. Knox County*, 122 U. S. 306 (7 Sup. Ct. 1171); *Gelpcke v. City of Dubuque*, 1 Wall. 176.

We are unable to perceive how the question of the validity of the bonds is affected by the allegation that the treasurer defaulted with $300,000.00 of the funds of the city. Nor do we think that the court should enquire concerning the motives which induced the voters of the city to incur this indebtedness, as, under the constitution of this state, the propriety of becoming indebted for procuring light and water is committed to such voters.

The remaining allegations of the complaint are directed to questions which, in our view, ought not to be considered by a court of equity without having all of the parties directly affected by the decree before it. These bonds were issued pursuant to legislative authority and the provisions of the freeholders' charter of the city of Tacoma. From an examination of the legislative enactments and the charter provisions, we think the bonds are in law what, in fact, they purport to be — negotiable bonds — that is, bonds having all of the incidents of negotiability, and which, in the hands of a holder for value before maturity, cut off defenses, and to the payment of which the faith and credit of the city are unquestionably pledged. Such being their character, the court would, it seems to us, be doing an idle and vain thing in decreeing them invalid. Such a decree could have no binding force as against strangers to the record. *Board v. Texas & Pacific Ry. Co.*, 46 Tex. 316; *Hoppock v. Chambers*, 96 Mich. 509 (56 N. W. 86).

"No court can adjudicate directly upon a person's

right, without the party being either actually or con-
structively before the court." *Mallow v. Hinde,* 12
Wheat. 193.

In *Shields v. Barrow,* 17 How. 129, it is said that the
court "can make no decree affecting the rights of an
absent person, *and can make no decree between the par-
ties before it, which so far involves or depends upon the
rights of an absent person that complete and final justice
cannot be done between the parties to the suit without
affecting those rights.*"

This question engaged the attention of the supreme
court of the United States in a very recent case — *Cali-
fornia v. Southern Pacific Company,* 157 U. S. 229 (15
Sup. Ct. 591) — in which Chief Justice FULLER, speak-
ing for the court, says:

"Sitting as a court of equity we cannot, in the light
of these well-settled principles, escape the considera-
tion of the question whether other persons who have
an immediate interest in resisting the demand of com-
plainant are not indispensable parties or, at least so
far necessary that the cause should not go on in their
absence. Can the court proceed to a decree as between
the state and the Southern Pacific Company and do
complete and final justice, without affecting other
persons not before the court, or leaving the contro-
versy in such a condition that its final termination
might be wholly inconsistent with equity and good
conscience?"

And the court decided in that case "that the bill
must be dismissed for want of parties who should be
joined."

The demurrer to the complaint was properly sus-
tained, and the judgment of the superior court is af-
firmed.

HOYT, C. J., and SCOTT and ANDERS, JJ., concur.

DUNBAR, J. (*concurring*).—I did not agree with the

conclusion reached by the majority in *Seymour v. Tacoma*, reported in 6 Wash. 427 (33 Pac. 1059). Nevertheless, it was the decision of this court, and as, in my judgment, the legal questions involved here were settled by that decision, I feel compelled to concur in the result above announced.