CITY OF EL RENO *et al.* v. CLEVELAND-TRINIDAD PAVING CO.

No. 1130.        Opinion Filed February 8, 1910.

(107 Pac. 163.)

1.   JUDGMENT—Res Judicata—Identity of Parties and Subject-Matter. The fact that the parties, plaintiff in error and defendant in error. in the instant case were not placed in adversary positions as parties in the former case will not deprive the final judgment therein of its force and effect when pleaded as an estoppel to the instant case, provided they were all proper parties to the first case, and the questions now raised were or could have been as fully asserted and maintained in the former suit as this.

2.   SAME—Conclusiveness of Judgment on Demurrer. A judgment rendered upon a demurrer to a petition or complaint between the same parties and on the same facts pleaded in a subsequent action is final and conclusive until reversed on appeal, and is a bar to any subsequent action based thereon.

3.   MUNICIPAL CORPORATIONS — Improvements—Injunction by Taxpayer. A resident taxpayer of an improvement district in

a city of the first class, although he shows no special private interest. may invoke the interposition of a court of equity to restrain the carrying into effect of an invalid contract for paving and guttering said improvement district, and such suit is not premature because commenced before the passage of the assessment ordinance and the creation thereby of a lien against his property.

4. **MUNICIPAL CORPORATIONS** — Improvements—Invalid Contract—Action by Taxpayers. Such a suit may properly be brought in the name of one or more of the taxable inhabitants of the district for themselves and all others similarly situated, and the court should then regard it in the nature of a public proceeding to test the validity of the corporate acts sought to be impeached, and deal with and control it accordingly.

5. **JUDGMENT**—Res Judicata — Identity of Issues. When a resident taxpayer of an improvement district of a city of the first class brings a suit for himself and all others similarly situated against certain defendants to enjoin the carrying into effect of a contract for paving and guttering said district upon the ground that said contract was invalid, and a final judgment adverse to said plaintiffs is entered therein and remains unappealed from, there is sufficient identity between the parties filing such suit and a subsequent suit brought by one of the defendants of the former suit against his codefendants, wherein the validity of said contract is involved. to justify the pleading of the decree entered in the first suit as res judicata as to all questions concerning the validity of the contact that are identical in both cases, and that were or could have been tried in the former.

6. **INJUNCTION**—Enforcement of Invalid Ordinance. If an ordinance be passed and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement.

(Syllabus by the Court.)

*Error from District Court, Canadian County; Frank M. Bailey, Judge.*

Action by the Cleveland-Trinidad Paving Company against the City of El Reno and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*R. B. Forrest* and *Lucius Babcock,* for plaintiffs in error.—Citing: *Frantz v. Autry* (Okla.) 91 Pac. 193; *Lewis v. Denver City Waterworks* (Colo.) 34 Pac. 993; *Des Moines Gas Co. v. City of Des Moines,* 44 Iowa 505; High on Injunctions (3d Ed.) sec. 1246; *State v. Superior Court* (Wis.) 81 N. W. 1054; *Harvey v. Os-*

*born,* 55 Ind. 535; *Ostrander v. Hart,* 130 N. Y. 406; *Bulkley v. House,* 62 Conn. 460; 23 A. & E. Enc. L. (2d Ed.) 730, 731; *Martin v. Clay,* 8 Okla. 46; *Dunham v. Linderman,* 10 Okla. 570; *Stiles v. City of Guthrie,* 3 Okla. 26; *Challis v. City,* 39 Kan. 276.

M. D. *Libby* and D. C. *Westenhaver,* for defendant in error.— Citing: *Pettis v. McClain,* 21 Okla. 521; Freeman on Judgments (4th Ed.) sec. 267; *Corcoran v. C. & O. Canal Co.,* 94 U. S. 741; *Marine Bank v. Heller,* 94 Md. 213; *Waldo v. Waldo,* 52 Mich. 91; *Goldschmidt v. County of Nobles,* 37 Minn. 49; *Stallcup v. Tacoma, Wash.,* 52 Am. St. Rep. 25; *Secor v. Singleton,* 41 Fed. 725; *Kellogg v. School Dist.,* 13 Okla. 285; *Denison v. Kansas City,* 95 Mo. 416; *Crampton v. Zabriskie,* 104 U. S. 601; *Shields v. Oklahoma City,* 22 Okla. 265; Dillon on Munic. Corp., sec. 915; *Harmon v. Auditor,* 123 Ill. 122; *Sabin v. Sherman,* 28 Kan. 289; 22 Cyc. 890, 891; McQuillen on Munic. Ordinances, secs. 163, 285; *New Orleans Waterworks v. New Orleans,* 164 U. S. 471; *Marbury v. Madison,* 1 Cranch (U. S.) 137; *Walla Walla v. Water Co.,* 172 U. S. 1; *Detroit vs. Railway Co.,* 184 U. S. 368; *Cleveland v. City Ry. Co.,* 194 U. S. 517; *Cicero Lumber Co. v. Cicero,* 176 Ill. 9; *Deems v. Baltimore,* 80 Md. 164; *Birdsall v. Clark,* 73 N. Y. 73; *Greenwich Ins. Co. v. Carroll,* 125 Fed. 121; *Los Angeles, etc., Co. v. Los Angeles,* 88 Fed. 720; *Lane v. Allen,* 130 U. S. 177; *N. Y., etc., R. R. Co. v. Schuyler,* 17 N. Y. 592; *City of Seattle v. Stirrat,* 104 Pac. 834.

KANE, J.   This was a suit commenced by the defendant in error, plaintiff below, against the City of El Reno, Okla., J. A. La Bryer, mayor of said city, F. T. Stackpole, city clerk of said city, C. C. Brown, T. J. Abbott, John W. Freeborn, A. L. Nicholson, L. J. Stoneman, William Devine, J. M. Carter and W. B. Roberts, councilmen of said city, to enjoin them from publishing and putting into effect an ordinance repealing a certain assessing ordinance passed by the authorities of said city for the purpose of providing means to pay for paving a certain portion of said city, for the performance of which work the plaintiff and the city authori-

ties had entered into a contract. The petition sets out in full all the proceedings of the council in relation to the authorization of such improvement, the making and entering into the contract with the plaintiff, the appraisement and apportionment of the benefits therefrom to the lots and tracts of land in the improvement district, the confirmation of such appraisement and apportionment, the passage of the assessing ordinance, the adoption of the resolution providing for the issuance of the bonds in payment thereof, and the subsequent proceedings approving the estimate and authorizing the bonds to be executed and delivered in payment therefor. The petition further sets out the proceedings whereby the council attempted by ordinance to repeal such assessing ordinance, and further alleges that the passage, approval and publication of said repealing ordinance will cause all persons owning property in said district to refrain from paying the installment of the assessments falling due on the 1st of September, 1909, and would thereby deprive the plaintiff of such payment as is due under the terms of his contract; that the defendant the city clerk, and other defendants, threaten to and will cause said repealing ordinance to be published, unless restrained; that the repealing ordinance is an attempt to violate the terms of the contract between the plaintiff and the city; that the mayor and councilmen had no power or authority to repeal the same upon the grounds and for the reason set forth in the repealing ordinance; that there is no valid ground or reason existing sufficient to justify, authorize, or empower the mayor and councilmen of said city of El Reno to repeal said assessing ordinance; that said ordinance attempting so to repeal the assessing ordinance is null and void; that, if it is permitted to stand and be published, it will cast a cloud upon the validity and destroy the value of the bonds due and to become due to the plaintiff under and by virtue of its contract, and will thereby deprive the plaintiff of the means of performing its contract, to its great and irreparable injury and damage.

The answer of the defendants as supplemented by an agreed statement of facts raises the question as to the sufficiency of the

proceedings had by the city authorities to authorize the making of a valid contract for such street improvements, and also raises the question of the power of the court to enjoin the action of the council, on the assumption that such action is legislative in its character, and beyond the control of the courts.

The reply of the plaintiff introduces two affirmative defenses, only one of which it will be necessary to notice. It avers: That one J. E. Jones, the owner of property in said street improvement district, brought an action in the district court of Canadian county, the same court wherein this proceeding was begun, which was finally heard and disposed of on the 20th day of January, 1909. That the plaintiff in that case made the Cleveland-Trinidad Paving Company and the mayor and members of the city council of El Reno parties defendant, and afterwards, by order of the court, the city of El Reno was also made a party defendant. That the plaintiff in that case brought his action on behalf of himself and all other property owners similarly situated in said paving district for the purpose of enjoining the carrying into effect the same contract involved in this case. That all of the grounds of objection to the validity and regularity of any and all of the proceedings upon which this contract is based that are made in this case were made in that. That a general demurrer was filed to the petition in that case by all the defendants, the Cleveland-Trinidad Paving Company also filing an answer thereto. That on the 20th day of January, 1909, the court heard that case upon the demurrers, and sustained the same. Thereupon, the plaintiff refusing to plead further, and announcing to the court that he stood upon his amended petition, the court found for the defendants and rendered judgment against the plaintiff, to the effect that he take nothing by his action, and that the defendants and each of them go hence without day, etc. That this judgment remains in full force and effect, unreversed and not appealed from.

On the 28th day of September, 1909, the case at bar came on to be heard upon the questions raised by the foregoing pleadings, and upon the stipulation embodying the evidence. On the same day

the court, by its' final judgment, decreed the repealing ordinance to be null and void and of no force and effect, and that the cloud created by the passage and the approval of the same upon the plaintiff's contract and the bonds authorized to be issued in payment of the work done and to be done thereunder is removed and cleared. The defendants, and each of them, were perpetually enjoined from publishing said ordinance, and from taking any other or further action for the purpose of putting the same into force and effect. To reverse this decree, this proceeding in error was commenced in this court.

If the plea of *res judicata*, interposed by the reply of the defendant in error, is fully sustained and ample to stop the plaintiffs in error in this case from again litigating the same questions that were litigated in the case of J. E. Jones v. City of El Reno *et al.*, it will not be necessary for us to examine in detail the proceedings upon which the contract in this case is based. Jones was a property owner in the paving district, and sued on behalf of himself and all others similarly situated. The Cleveland-Trinidad Paving Company and the city of El Reno, the real parties in interest in the present case, were parties defendant in the Jones case. The purpose of that suit was to enjoin the carrying into effect the contract herein set out, and the grounds, with one exception which will be hereafter noticed, upon which Jones sought relief were the same as those urged as a defense to the case at bar. The fact that the plaintiffs in error and defendant in error were all defendants, and not placed in an adversary position in the Jones case, does not deprive the final judgment therein of its force and effect. The final judgment is none the less an estoppel as to all matters in issue because the parties, plaintiff and defendant, in the second suit, were arranged as co-plaintiffs and co-defendants in the former suit. *Corcoran v. C. & O. Canal Co.*, 94 U. S. 741, 24 L. Ed. 190; *Marine Bank v. Heller*, 94 Md. 213, 50 Atl. 521; *Waldo v. Waldo*, 52 Mich. 91, 94, 17 N. W. 709, 710. In the last cited case the plaintiff in the second action asserted rights different from those established by the decree in the first action,

and, replying to his contention that he was not conclusively bound by the former decree because he was a co-defendant, the opinion says:

"The right now claimed by complainant could have been as fully asserted and maintained in the former suit as in this. It was competent for the court in that case, upon the pleadings and such proofs as were proper in the case, to make a decree determining and establishing the rights and interests of each of the parties without the necessity of a cross-bill or other proceeding for affirmative relief. * * * The complainant was a necessary party in the first suit (see Story's Eq. Plead. [6th Ed.] §§ 72, 150, and cases there cited), and, being such party, he was a party to every issue joined and litigated in it that could in any way affect his interests or his rights, and must be concluded by the decree upon those issues, and, if he did not maintain his rights, the decree is no less binding so long as he had the opportunity and neglected to do so."

To the same effect are *Goldschmidt v. County of Nobles,* 37 Minn. 49, 33 N. W. 544; *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. Rep. 25; *Secor et al. v. Singleton et al.* (C. C.) 41 Fed. 725. That a judgment rendered upon a general demurrer being sustained is none the less a final judgment upon the merits has been settled by this court in *Pettis et ux. v. McLain et al.,* 21 Okla. 521, 98 Pac. 927, the same case holding also that:

"A judgment rendered upon a demurrer to a petition or complaint between the same parties and on the same facts pleaded in a subsequent action is final and conclusive until reversed on appeal, and is a bar to any subsequent action based thereon."

. Whether then the judgment in the Jones case is *res judicata* depends upon two inquiries: (1) The suit being commenced before the passage of the assessing ordinance and the creation thereby of a lien against his property (plaintiff's), was it prematurely commenced? (2) If not, had the plaintiff a right as the representative of other property owners similarly situated to bring the suit, and thereby preclude all members of the class from again litigating the same cause of action? That the plaintiff's suit was not prematurely brought is settled in this state in *Kellogg v.*

*School District No. 10, Comanche Co.,* 13 Okla. 285, 74 Pac. 110.
It was there held that:

"A resident taxpayer, although he shows no special private
interest, may invoke the interposition of a court of equity to pre-
vent an illegal disposition of the money of the municipality or the
illegal creation of a debt which he in common with other property
owners may otherwise be compelled to pay. Injunction at the
suit of a taxpayer is the proper remedy to restrain a school dis-
trict from contracting for or constructing school houses at unau-
thorized places, and contracting liabilities therefor which the dis-
trict would be liable for and the taxpayers required to pay."

To the same effect is *Hannan v. Board of Education of the
City of Lawton, ante,* p. 372, 107 Pac. 646. The fourth para-
graph of the syllabus to the Hannan case reads:

"A resident taxpayer, although he shows no special private in-
terest, may invoke the interposition of a court of equity to pre-
vent an illegal disposition of the money of a municipality, or the
illegal creation of a debt which he in common with other property
owners may otherwise be compelled to pay."

Having reached the conclusion that a resident taxpayer may
invoke the interposition of a court of equity to prevent an illegal
disposition of the money of a municipality or the illegal creation of
a debt which he in common with other property owners may be
compelled to pay, it follows logically that, in the absence of legis-
lation restricting the right to interfere in such cases to the proper
public officers of such municipality, any taxable inhabitants may be
allowed to maintain such suit in behalf of himself and all others
similarly situated to prevent or avoid the illegal or wrongful act.

"Certainly, in the absence of legislation restricting the right
to interfere in such cases to public officers of the state or county,
there would seem to be no substantial reason why a bill by or on
behalf of individual taxpayers should not be entertained to pre-
vent the misuse of corporate powers. The courts may be safely
trusted to prevent the abuse of process in such cases." (*Cramp-
ton v. Zabriskie et al.,* 104 U. S. 601, 25 L. Ed. 1070.)

Dillon on Municipal Corporations, § 915, states the rule as
follows:

"If the property or funds of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant and particularly any taxable inhabitant be allowed to maintain in behalf of all similarly situated a class suit to prevent or avoid the illegal or wrongful act?"

The same distinguished author, further discussing the same proposition, in section 922, says:

"The existence of such a power in the state or its proper public officer is not inconsistent with the right of any taxable inhabitant to bring a bill to prevent the corporate authorities from transcending their lawful powers where the effect will be to impose upon him an unlawful tax or to increase his burden of taxation. Much more clearly may this be done when the right of the public officer of the state to interfere is not admitted or does not exist, and in such case it would seem that a bill might properly be brought in the name of one or more of the taxable inhabitants for themselves and all others similarly situated, and that the court should then regard it in the nature of a public proceeding to test the validity of the corporate acts sought to be impeached and deal with and control it accordingly."

Treating the Jones case then as a public proceeding to test the validity of the acts sought to be impeached, all questions that were or could have been litigated at that time by him or any other property owner of the same class affecting the validity of the proceedings of the city authorities or of the contract predicated thereon must of necessity be *res. judicata.* If this were not the rule, Jones might have prosecuted his case to the Supreme Court, and the judgment of the district court against him be affirmed, and then his next door neighbor in the same paving district might bring a similar suit, go through the same formula, and so on, until all the inhabitants in that district had their turn in court. On this proposition the case of *Sabin v. Sherman,* 28 Kan. 289, is strongly in point. In that case Benton and others, citizens and taxpayers, had filed a petition to enjoin the canvass of the votes in an election

resulting in the relocation of a county seat. The decision was adverse, and was affirmed by the Supreme Court. The plaintiff in this case, thereafter being a citizen and taxpayer, brought another action to enjoin the county commissioners from canvassing the vote. It was held that the former judgment was a bar. Mr. Chief Justice Horton, in delivering the opinion of the court, says on this point:

"It appears from the record that the case of *Benton v. Nason, supra* [26 Kan. 658], was tried upon its merits, and the judgment therein rendered affirmed by this court. We perceive no error in the ruling of the district court. Although the plaintiff was not the same as in *Benton v. Nason,* yet it was the same interest which was plaintiff; and, where one case involving the county seat question has been heard upon the merits and decided, county commissioners ought not to be exposed to repeated suits from different parties. If this be not true, then it follows that it is within the power of those who may be dissatisfied with the result of a county seat election to defeat, almost forever, the canvass of the returns of the election by continued institution of new suits."

*Harmon et al. v. Auditor of Public Accounts et al.,* 123 Ill. 122, 13 N. E. 161, 5 Am. St. Rep. 502, is a case in point on the proposition that some may sue on behalf of all, and that a judgment in such suit is *res judicata* as to all others similarly situated. In that case originally six property owners and taxpayers filed a bill specially stating it to be on behalf of themselves and others for the purpose of enjoining the town of Mt. Morris and its officers from issuing bonds to the Chicago & Iowa Railroad Company. A final decree was rendered in this case denying relief, and the bonds were issued and delivered to the railroad company. Afterwards four other and different taxpayers brought suit to enjoin the collector from paying the principal or interest of these bonds or from collecting taxes on the property of the plaintiff and others to pay the same. The proceedings in the first case were set up in the last as a bar. The court held that the proceedings in the former case were a bar to the last suit, notwithstanding the taxpayers in the first suit did not expressly profess to sue on behalf of them-

selves and all other taxpayers.    Mr. Justice Magruder in delivering the opinion of the court says on this point:

"The present suit was begun by Harmon and others, also taxpayers and property owners of the town, as representatives of the same class, for whose benefit the Pinckney bill was filed.    The complainants in this proceeding were represented by the complainants in the former suit, and are therefore bound by the decree there entered.    The remedy in suits of the character  here indicated is in the interest of a class of individuals having common rights that need protection, and, in the pursuit of that remedy, individuals have the right to represent the class to which they belong.    This jurisdiction in some respects rests on the principles of a proceeding *in rem*.    We, therefore, think that there is sufficient identity between the parties filing the present bill and those who filed the bill in the Pinckney case to justify the pleading of the decree entered there as *res judicata* in this case.    The views here expressed are sustained by the following authorities: *State v. C. & L. Railroad Co.,* 13 S. C. 290; *Terry v. Town of Waterbury,* 35 Conn. 526; *Sabin v. Sherman,* 28 Kan. 289; *Smith v. Stormstedt,* 16 How. 303, 14 L. Ed. 942.    Other cases to the same effect are *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. Rep. 25; *Gallaher v. City of Moundsville,* 34 W. Va. 730, 12 S. E. 859, 26 Am. St. Rep. 942; *Ashton et al. v. City of Rochester et al.,* 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619; *Dewey v. St. Albans Trust Co.,* 60 Vt. 1, 12 Atl. 224, 6 Am. St. Rep. 84; *Cincinnati et al. v. Emerson,* 57 Ohio St. 132, 48 N. E. 667."

We have examined the brief of counsel for plaintiff in error with care, and find that with one exception every question they argue was or could have been litigated in the Jones case.    Under our view of the law, it will not be necessary to notice these propositions further.

The question in this case not settled in the Jones case involves the right of the defendant in error to enjoin the publication and putting into effect of said repealing ordinance.    The position of plaintiff in error is that in order to give the relief sought in this action it is necessary to control by injunction the legislative discretion of a municipal council.    A correct statement of the rule invoked by counsel may be found in 22 Cyc. p. 890, as follows:

"The general rule is that a municipal corporation in the exercise of legislative power in relation to the subjects committed to its jurisdiction can no more be enjoined than can the Legislature of the state.   There are exceptions, however, to this doctrine of non-interference, as where the mere passage of the ordinance would immediately occasion, or would be followed by, some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings, or where it would cause a multiplicity of suits.   So a distinction has been drawn between a case where the municipality is acting in its governmental or public character with discretionary authority and where it is acting as the owner of property.   Furthermore, if the ordinance, the passing of which is sought to be enjoined, is not within the legislative discretion of the municipal body, there is no question as to the jurisdiction to grant an injunction."

In McQuillin on Municipal Ordinances, § 163, the general rule of non-interference is in substance stated as above, and the exception to the rule is stated in the following language:

"The exception to the rule would seem to be limited to cases where the governing body of the municipality has no power to act on the particular subject, legislatively at all, or where the threatened act is not legislative, but purely ministerial, or where such body is clothed with certain powers, but threatens to go beyond or outside of such powers, and thereby invade the property or property rights of complainant, or where such body threatens to squander or divert some fund or property held by it or some of its officials in trust for its taxpayers and citizens."

At the time this action was commenced, the council had performed the formal function of adopting in regular session the repealing ordinance complained of.   The purpose of this suit is to restrain its publication by the city clerk and the putting of same into force and effect by the city and its executive officers.   The question at issue is whether or not the court may enjoin the publication of an ordinance or action on the part of the city officials putting into force and effect an *ultra vires* act taking the form of an ordinance, and remove the cloud created thereby upon the title to private property.   In the case of *New Orleans Waterworks v. New Orleans*, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518, Mr.

Justice Harlan, who delivered the opinion of the court, in speaking of this proposition, says:

"If an ordinance be passed and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement."

It being settled that all of the proceedings of the city authorities up to the time of letting said contract were regular, after the letting of the contract no discretion of any kind is vested in the city or its municipal council. Whether its action in declaring a necessity to pave, etc., or in ascertaining that no sufficient protests had been made and determining to proceed with the improvement, is legislative or administrative, do not concern us in this connection. After the contract has been let, the statute is mandatory in its terms that the council shall appoint appraisers, shall levy an assessment, shall provide for the issuance of bonds, that the mayor and clerk shall sign and attest the bonds, that the clerk shall publish notice of the time when the first assessment becomes due and payable, and shall certify to the county treasurer such assessments as are not paid within the time specified. All of these duties are ministerial, and the council, mayor, or clerk are left without any discretion as to whether they shall or shall not perform them. The street improvement act provides expressly that the bonds issued by the city shall not pledge the faith and credit of the city nor be collected from it otherwise than by the collection of the assessments imposed by the assessing ordinance. These assessments are the basis upon which rest the bonds issued in payment to the contractor. To destroy that assessing ordinance is to destroy the property of the contractor. To cast a cloud upon the assessing ordinance by an attempt to repeal is to create a cloud upon the title to his property, which will result in irreparable loss and which can be removed only by a suit in equity. The action of the council in attempting to repeal the assessing ordinance was not a legislative act taken by a legislative body in the exercise of a legislative discretion. It was an act with reference to a purely ministerial matter, and one clearly in excess of its powers. It

was an act outside of the powers of the municipal council which invades the property rights of the contractor.

That a law of a state depriving one of his property without due process of law or impairing the obligation of one's contract may be annulled and the execution thereof enjoined is a rule established by the Supreme Court of the United States as early as the case of *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60. That a municipal ordinance passed in the exercise of its delegated power is a law of the state, and, if the same has the effect of depriving one of his property without due process of law or impairing the obligation of one's contract, the same may be annulled and the enforcement thereof enjoined, seems to be also well settled. Among the cases sustaining this doctrine are *Walla Walla v. Walla Walla Water Company,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; *Detroit v. Detroit, etc., Ry Co.,* 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; *Cleveland v. Cleveland City Ry. Co.,* 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; *Cicero Lumber Co. v. Town of Cicero,* 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; *Deems v. Baltimore,* 80 Md. 164, 30 Atl. 648, 26 L. R. A. 541, 45 Am. St. Rep. 339; *Birdsall v. Clark et al.,* 73 N. Y. 73, 29 Am. Rep. 105; *Greenwich Ins. Co. et al. v. Carroll* (C. C.) 125 Fed. 121; *Los Angeles City Water Co. v. Los Angeles* (C. C.) 88 Fed. 720; 22 Cyc. p. 891. That the action of the council in attempting to repeal the assessing ordinance will, if permitted to stand, work irreparable injury for which there is no adequate redress at law, is evident. The contract requires the contractor to take bonds at par in payment for his labor and materials. These bonds rest solely upon the assessments provided for by the ordinance. The contractor has no source or fund to which he can look for payment of those bonds except the collection in due course of those assessments. The so-called repealing ordinance, if permitted to go into effect, would destroy all prospect of procuring payment of the interest or principal of the bonds. Moreover, the contractor must depend upon a resale of those bonds to procure funds with which to prosecute the contract to completion.

What remedy at law can be imagined adequate to meet this situation? The city certainly cannot be compelled to pay bonds from funds raised by taxation. Even if it could, the law cannot adequately measure the damage, and the delays incident to such a proceeding would produce great injury to the contractor and confusion and endless vexation to the citizens of the municipality. It seems to us there is no speedy and adequate remedy open to the contractor, except a decree declaring the repealing ordinance to be null and void and enjoining its publication.

The judgment of the court below is therefore affirmed.

Dunn, C. J., and Hayes, Turner, and Williams, JJ., concur.