[No. 14591.  Department Two.  April 29, 1918.]

## NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*, v. SNOHOMISH COUNTY, *Appellant*.[1]

JUDGMENT—RES JUDICATA — IDENTITY OF PARTIES.  A judgment in mandamus at the suit of the mayor of a city compelling a county tax assessor to extend a tax levy upon the county rolls, is not *res judicata* or a bar to an action by a taxpayer to cancel taxes against his property based upon the levy; since the parties are not the same, either actually, or potentially as a member of a class.

COURTS—RULE OF DECISION—STARE DECISIS.  A writ of mandate compelling a county assessor to extend a tax levy upon the county rolls is not controlling under the rule of *stare decisis*, in a taxpayer's suit contesting the tax, where there was no general acquiescence of long standing by taxpayers nor any vested rights acquired under the former judgment.

MUNICIPAL CORPORATIONS—TAX LEVIES—VALIDATION—STATUTES—. CONSTRUCTION.  Rem. Code, § 5140-4, validating 1913 and 1914 tax levies by cities of the third class made in excess of limitations by statute, with the proviso that the act shall not apply to such cities as "did not attempt to collect such levies, or which cancelled the same," validates all excess levies mentioned except in cities where no taxpayer had paid the excess tax at the time of the passage of the validating act; this construction of "attempt to collect," when cities have no power to make the collection or to cancel the tax, being necessary to avoid an obvious absurdity.

SAME.  In such a case, a mandamus suit to enforce a levy would not be within the proviso as an "attempt to collect," when the suit was not brought until after the passage of the validating act.

HOLCOMB, J., dissents.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered September 29, 1917, in favor of the plaintiff, after a trial to the court upon an agreed statement of facts, in an action to cancel a tax.  Affirmed.

*John Sandidge, Lloyd L. Black,* and *E. W. Klein,* for appellant.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte,* and *C. A. Murray,* for respondent.

[1]Reported in 172 Pac. 878.

Ellis, C. J.—Plaintiff brought this action to cancel and strike from the tax rolls of Snohomish county certain taxes against its property based upon the levy for city purposes by the city of Snohomish, a city of the third class, for the year 1913, and extended upon the county tax rolls for the year 1916.

The agreed facts are as follows: The city made a levy for the year 1913 of 19.25 mills for all city purposes. That levy was certified for extension on the tax rolls of Snohomish county, but at the suit of a taxpayer against the county assessor, the extension as to all of the levy in excess of 4.8 mills was, by the superior court, enjoined as illegal and excessive. On appeal to this court the decree of injunction was affirmed. *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883. Thereafter the levy to the extent of the 4.8 mills which was not enjoined was extended upon the county tax rolls for the year 1913, and the resulting tax as against the property of the plaintiff herein was paid. No attempt was then or thereafter made by the city or county of Snohomish to extend or collect the 14.45 mills which had been so adjudged excessive and illegal, until after the passage by the legislature of 1915 of chapter 176, Laws of 1915, p. 587, entitled: "An act relating to the validation of certain tax levies in cities of the third class, and providing for their collection."

Subsequent to the passage of the act of 1915, in an action styled State ex rel. Watson v. Davies, a writ of mandate was issued from the superior court for Snohomish county directing the assessor to extend upon the county rolls for the year 1916 the excessive 14.45 mills of the 1913 levy. The extension was accordingly made upon the basis of the 1913 valuation, hence this suit.

Upon these facts, the trial court in this action entered a decree cancelling the tax levy as against plaintiff's property. The county appeals.

Appellant contends (1) that the decree in State ex rel. Watson v. Davies is *res judicata* in this case, or, in any event, should be followed on the principle of *stare decisis;* and (2) that the trial court placed an erroneous construction upon chapter 176, Laws of 1915, p. 587, § 1 (Rem. Code, § 5140-4). We shall consider these in the order stated.

I.    Is the mandate issued in the suit of the mayor of the city against the assessor of the county a bar to this action? We think not. To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made. 1 Freeman, Judgments (4th ed.), § 252; 3 Bouvier's Law Dictionary (Rawles' 3d Rev.), p. 2910; *Atchison, T. & S. F. R. Co. v. Commissioners of Jefferson County,* 12 Kan. 127; *Turner Township v. Williams,* 17 S. D. 548, 97 N. W. 842. Manifestly there is no such concurrence of identity in these two suits. It may be conceded that the subject-matter is the same and, in a broad sense, that the causes of action are identical, but there the identity vanishes. The parties are not the same, either actually or by privity. Neither the plaintiff nor the defendant in the other action appeared in the same quality or capacity as does the plaintiff in this action. The mayor's action was not in his personal quality or capacity as a taxpayer on his own behalf and on behalf of others similarly situated, nor did the county assessor defend in the capacity of a taxpayer. The mayor did not sue, nor the assessor defend, as a member of a class for himself and others of the same class, as, for instance,

in the case of a stockholder's action. Respondent was not a party to the other action, either actually, or potentially by representation as a member of a class. On the contrary, respondent's interest was, and is, adverse to that of both parties to the other action in the capacity in which they there appeared. In fact, that whole proceeding was in its purpose adverse to respondent's interest. Respondent had no day in court in that action. The judgment there is not a bar to its action here.

"Of course, to say that a decree rendered *pro confesso* in an action between two parties, both of whose interests are adverse to the plaintiff's, concludes this plaintiff, and bars its rights, is absurd." *Atchison, T. & S. F. R. Co. v. Commissioners of Jefferson County, supra.*

The rule announced in *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. 25, relied upon by appellant, has no application to the facts here. The other case cited by appellant in this connection, *Waldron v. Snohomish,* 41 Wash. 566, 83 Pac. 1106, is even less apposite. It rested upon specific statutory provisions governing reassessments for local improvements. The general doctrine of *res judicata* was not involved.

The claim that the decision in the suit of the mayor against the county assessor, which was not appealed from, should be adhered to under the doctrine of *stare decisis* is untenable. That doctrine is invoked to preserve rules of law established by decisions of long standing, usually of courts of last resort. There is no evidence in this case that there has been any general acquiescence by the taxpayers affected in the judgment entered in the mayor's action, nor that any vested rights have been acquired thereunder.

II. Did the trial court place an erroneous construction on chapter 176 of the Laws of 1915, p. 587? We think not. That act, omitting title, reads as follows:

"Section 1. The tax levies made by cities of the third class for the years 1913, 1914 and prior years are hereby ratified and validated wherever the only reason of the invalidity of such tax levy or levies is that the same were made in excess of the limitation prescribed by statute, or were not apportioned according to the provisions of chapter 108, Laws of 1913; and upon the taking effect of this act, the proper officers are hereby authorized and directed to proceed with the extension, collection and enforcement of the lien of such taxes; and collections heretofore made are hereby ratified: Provided, This act shall not apply to such cities as did not attempt to collect such levies or which cancelled the same." Rem. Code, § 5140-4.

It was sustained by this court as constitutional in *Owings v. Olympia*, 88 Wash. 289, 152 Pac. 1019. Appellant relies upon the body of the act as validating the excess levy of 1913 as extended on the rolls for 1916. Respondent relies upon the proviso as excluding that excess from the purview of the act. The meaning of the body of the act is expressed with reasonable certainty, but it would be difficult to achieve a greater inaccuracy in terms in the same number of words than that presented in the proviso. In the first place, a *levy* is neither collected nor collectible until it is merged into a tax in specific sums against specific properties by the action of the county commissioners. Accurately speaking, cities do not make levies, but merely estimates to guide the commissioners in levying taxes for city purposes. *State v. Snohomish County*, 71 Wash. 320, 128 Pac. 667. In the second place, cities in this state cannot *collect* taxes, much less incipient levies, and presumably never *attempt* to do so. The collection of taxes is by statute imposed upon the county authorities. In the third place, cities do not *cancel* tax levies in any literal sense. We shall assume that the city might effectively repeal or amend the ordinance making the incipient levy or estimate for city purposes at

any time before the expiration of the period for cer-
tification to the county officials for extension on the tax
rolls, but in this case such a course would have been an
idle formality. That period had passed before the de-
cision of the superior court enjoining the extension of
the levy as a tax, which decision was affirmed in the
case of *Whitfield v. Davies, supra.* That decision effec-
tually cancelled the incipient levy in the only manner
in which it then could be cancelled. It annulled it.

Literally construed, it is obvious that the proviso
cannot apply to any city or any levy or any tax. But
the legislature must have meant something by this
proviso. It is our duty, within the bounds of reason, to
give it some meaning rather than none. Let us, there-
fore, assume that the word "collect" was not used in
a literal sense, but in a broad sense embracing the
whole process or system by which cities of the third
class through the county machinery raise revenue by
taxation. Giving the word collect this broad signifi-
cance, appellant contends that the city of Snohomish,
by making the initial levy and by certifying it for ex-
tension on the county rolls, did all that it legally could
do towards a collection and only failed because of the
injunction in the *Whitfield* case, and, therefore, these
things must be held an "attempt to collect" by the city
within the meaning of the proviso. But so to construe
those proceedings makes the proviso, when read with
the body of the act, absurd because meaningless. The
act deals with excess levies and nothing else. It vali-
dates them and authorizes their extension on the rolls
and the collection of the resulting tax. It ratifies col-
lections theretofore made. It is self-evident that where
there is no excess levy there is nothing to validate,
nothing needing an authorization to extend or collect,
nothing to ratify, in short nothing to which either the
act or the proviso can apply. If, therefore, the very

proceedings, the excess levy and certification for extension of that excess, which alone can create or occasion the subject-matter of the body of the act are to be construed as an "attempt to collect" within the proviso, then the act with the first clause of the proviso means just what it would mean without it. The first clause of the proviso would add nothing, except nothing, provide nothing, and the legislature would stand convicted of a deliberate absurdity.

To avoid this absurdity and give any meaning to the first clause of the proviso, the words "attempt to collect" must mean at least a partially successful attempt to do the final act of raising the excess revenue, namely, the procuring of the money from the taxpayers by the county treasurer for the city. In cities where the attempt had been wholly successful and all of the excess taxes had been paid, the ratification of collections met the whole purpose of the act. But in those cities where the illegal excess tax had not been aborted, either by abandonment or court decree, before it reached the final stage of collection, and there had been an attempt to collect, partially but not wholly successful, something more than ratification was necessary to complete the collection. The tax must be validated and collection authorized in addition to the ratification of collections already made. These things are supplied by the other parts of the act, which but for the proviso would apply to all cities which had made and certified excess levies, whether any part of the excess had been collected or not. But the proviso, as we must construe it, limits the application of those provisions by declaring that they shall not apply to cities the excess levies of which there had been no attempt to consummate the final act of collection. This view was well expressed by the trial court as follows:

"Chapter 176 means that all the excess levies mentioned in it are validated, their collection authorized and directed, and any collections on account of such made prior to the taking effect of Chapter 176 in June, 1915, ratified except where for any reason whatsoever, be it the decree of injunction in the case of the City of Snohomish (*Whitfield v. Davies, supra*) or some voluntary action, regularly or irregularly taken in some other of the third class cities of the state, no payment of any of the excess levy has been made by a taxpayer."

This view is further justified by the fact that it leads to equality of taxation of all persons in third-class cities similarly situated. In every city of the third class where there was an excess levy and no taxpayer of such city had paid the excess tax at the time of the passage of the validating act, no taxpayer should be compelled to pay, as there was an equality of burden without such payment, hence the proviso, as we construe it, that the act should not apply to such city. But in any city where any of the taxpayers had paid the excess tax, the act creates an equality by making it incumbent on all other taxpayers of such city to pay it. Looking to the prior law, the mischief and the remedy, this must have been the purpose in the legislative mind in passing the proviso.

The suggestion that the mandamus action of the mayor against the county assessor was an attempt by the city to collect the tax is answered by the fact that, even so considered, it came too late. It was long after the passage of the validating act, while the proviso in terms relates to attempts to collect prior to that time.

We hold that, on the agreed facts before us, neither the city of Snohomish, nor the county treasurer for it, had attempted to collect the excess tax within the meaning of the proviso, but that the excess tax levy had been cancelled and annulled by the decree in *Whitfield v. Davies, supra,* in the only way in which it could

be cancelled after the time for certification for extension on the rolls had expired, namely, by the judgment of a court. Construing the proviso in the only way which gives it any force, the tax here falls within both the contingencies contemplated by the proviso as excepting it from the validating effect of the body of the act.

The judgment is affirmed.

MOUNT, FULLERTON, and CHADWICK, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, the proviso in question is uncertain, meaningless, or repugnant to the purview of the body of the act, if given any meaning and effect, and should be declared void. I therefore dissent.