SPITZER *et al.* v. CITY OF EL RENO *et al.*

No. 2849.    Opinion Filed August 6, 1913.

Rehearing Denied February 12, 1914.

(138 Pac. 797.)

MUNICIPAL CORPORATIONS — Special Assessment—Distribution of Fund—Injunction. The city of El Reno contracted with the paving company for the construction of certain street improvements under the provisions of the Paving Laws of 1907-08 (Sess. Laws 1907-08, c. 10, art. 1). After signing of contract and issuance of bonds, the work was, for some reason, delayed, and by reason of such delay a large amount of interest accrued on the bonds. The contractor was to take the bonds at par in exchange for the improvement, the total cost of which was $421,258.77, to be paid in ten equal installments. The first and second installments were paid prior to the completion of the work. When the improvement was completed, the paving company claimed all the bonds and interest remaining in the hands of the city treasurer, which included the interest accrued during the time the work

Syllabus.

was delayed. The city refused to pay this amount. A compromise was effected, by which the bonds were delivered to the paving company, and it paid back to the city the sum of $14,549.17 in cash, in lieu of the accrued but unearned interest. This was an excess sum derived from assessments paid by the property owners for the purpose of paying the first installment, but which, by reason of the compromise, was not needed for that purpose. The city also had in its possession $7,500 derived from the enforcement of- the 18 per cent. penalty on the first assessment which the property owners had refused to pay until the causes occasioning the delay in the work had been removed. These two sums the city proposed to repay to the property owners, for the reason that there was no other use or purpose to which they could legitimately be diverted. The special assessment already levied was ample to take care of and pay all subsequent installments. The owners of the bonds (they having been sold to other parties by the paving company) brought injunction proceedings against the city to prevent this proposed distribution. **Held:**

(a)  Such sums, having been improvidently collected from the various property owners, in excess of the amount actually needed, did not partake of, nor were they in any wise clothed with, the characteristics of the trust fund designed by statute for the payment of the various installments of assessments.

(b)  The scheme of the statute is to raise only such sum by special assessment as will pay the actual cost and expense of the proposed improvement.

(c)  It is not the intent of the law to create a surplus in said fund or in any of said funds; each year's assessment is designed to take care of and pay its installment and interest and no more.

(d)  Each lot and parcel of land in the improvement district must bear its equal share in the total cost and no more.

(e)  No property owner can be assessed more than his legitimate share, in order to make up, or secure the payment of, any delinquency on the part of any other property owner.

(f)  If one is, for any reason, required to or does pay into said fund any more than his legitimate assessment, the surplus, in equity, belongs to him.

(g)  These sums in dispute, by misfortune or miscalculation, were exacted in excess of the sums actually due the fund, and those who paid it in are, in equity, entitled to have the same refunded to them.

(h)  The bondholders have no interest, direct or indirect, in said sums or any part thereof, and are not entitled to injunction to prevent its distribution.

(i)  The question of whether, or not, the proposed distribution is in accordance with the law, not being properly before us, is not decided.

(Syllabus by Robertson, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by Ceilan M. Spitzer and others against the City of El Reno and others. Judgment for the city, and plaintiffs bring error. Affirmed.

*M. D. Libby,* for plaintiffs in error.

*Lucius Babcock,* for defendants in error.

Opinion by ROBERTSON, C. This was an injunction proceeding in the district court of Canadian county, by Ceilan M. Spitzer and others, partners, doing business as Spitzer & Co., Bankers, against the city of El Reno. At the commencement of the suit, the city was governed by a mayor and eight councilmen. During the litigation the city changed from aldermanic, to commission, form of government, and this cause, by agreement of parties, now proceeds against the city of El Reno, P. P. Duffy, *ex officio* mayor, John V. Koogle, and Davis Guion, commissioners, as defendants in error. The object of the injunction was to prevent said defendant city and its officers from appropriating or issuing orders or warrants upon, or paying out, a certain special fund then in the hands of the city treasurer and derived from assessments levied against private property for street improvements for any purposes whatever, save and except in payment of bonds issued for said street improvements, and interest, at maturity, and from appropriating, or paying out, interest collected on said assessments or reimbursed and repaid into said special fund by the Cleveland Trinidad Paving Company, by virtue of a certain settlement theretofore made and entered into between said city and said paving company, except in regular payment of said bonds and interest. The city answered by general denial and, in addition, set up and relied upon a certain compromise agreement made in November, 1910, between the Cleveland Trinidad Paving Company and said city, whereby said city agreed to deliver to the said paving company certain bonds in settlement of the contract in paving district No. 2, and the said paving company was to pay to the said city the sum of $14,549.17; that the said paving company accepted the terms and conditions of said agreement and paid said money to said city, and that said

payment was unconditional, and attached a copy of said agreement to its answer as an exhibit, and relied upon the settlement set out in said agreement as a full and complete adjustment of all the differences between said paving company and said city. The cause was tried to the court on an agreed statement of facts, except as to one or two points which will be hereafter noted, and resulted in a judgment against the plaintiffs and in favor of the city, denying the injunction and taxing the costs to the petitioners. From this judgment the plaintiffs appeal.

The facts necessary for a thorough understanding of the controversy are, briefly stated, as follows: The plaintiffs are a partnership doing business in the city of Toledo in the state of Ohio. The city of El Reno is a municipal corporation and city of the first class under the laws of the state of Oklahoma. On the 16th day of September, 1908, said city adopted a resolution whereby it was declared that the grading, paving, curbing, guttering, and draining of certain streets and avenues in said city was necessary, and that the cost and expenses of such improvements should be paid by special assessments levied, as provided by law, upon the lots and parcels of land liable to assessment for the same, all of which lots and parcels of land were fully set out and described in said resolution, and the said resolution was passed and published in conformity to law.

On October 20, 1908, at an adjourned regular meeting of the mayor and councilmen of said city, a resolution was regularly adopted, which recited that no sufficient protest on the part of the property owners had been filed against the making of such improvements and expressed the determination to proceed with the improvements, which were in said resolution defined minutely, and instructed the city engineer to proceed to prepare the necessary plans, plats, profiles, and specifications and estimate of cost, and to advertise for a contractor. That the city engineer did thereafter present plans and specifications and estimate of costs, and the same were adopted by the city by resolution and described said improvements as street improvement district No. 2. That thereafter, at the time and place specified in the notice, the mayor and councilmen of said city in regular session examined the bids

received, and awarded the contract for furnishing the material and performing the work necessary in making said improvements to the Cleveland Trinidad Paving Company, it being the best and lowest bidder, and did thereafter make and enter into a contract with said paving company in the name of the city, in accordance with the terms of said award. That thereafter the said mayor and said council, by resolution duly made and entered, did appoint a board of appraisers, who, in accordance with the terms of the statute, made appraisement and apportioned the benefits of the several lots and parcels of land liable to assessment for the cost of the said improvement, which said appraisement and assessment was returned and filed with the city clerk in accordance with the terms of the statute. That thereafter by resolution the said mayor and council appointed a place and time for holding a session for the purpose of hearing complaints or objections concerning said appraisement and apportionment, and, after due consideration thereof, did adopt a resolution confirming said appraisements and apportionments, and that thereafter the said mayor and council did adopt and approve, and cause to be published in the manner provided by law, a certain ordinance, and did thereby levy assessments in accordance with said appraisements and apportionment as confirmed, against the several lots and parcels of land liable to assessment for the payment of the costs of said improvement. That the first installment of said assessment fell due on the 1st day of September, 1909, together with interest at the rate of seven per cent. per annum on the whole assessment from the date thereof, and the city clerk did publish in two consecutive issues of the daily paper published in said city a notice advising the owners of property affected by such assessments, of the date when such installment and interest would be due, designating the streets and avenues and parts thereof for the improvement of which such assessments were levied, and that unless the same should be promptly paid such installment would bear interest at the rate of eighteen per cent. per annum thereafter until paid, and that proceedings would be taken according to law to collect such installment and interest

Numerous property owners failed, neglected, and refused to pay the said first installment to the city clerk within the time prescribed, after March 19, 1909, the date of the passage of the ordinance levying the assessments, and refused to pay such installments with interest on or before the 1st day of September, 1909. That the amount of said first installment, due and payable on the 1st day of September, 1909, and remaining unpaid, amounted to $42,258.77, and the accrued interest on the whole assessment due and payable, on the said date and remaining unpaid, amounted to $13,269.65. That the said city clerk thereafter and on the 1st day of September, 1909, certified said first installment and interest remaining unpaid to the county treasurer of Canadian county, to be by that officer placed on the delinquent tax list of said county and collected as other delinquent taxes are collected. That the same was placed upon the said delinquent tax list, and was collected with interest and cost as provided by law, and the said county treasurer did pay over to the said city treasurer the whole amount of said installment and interest collected by him, for disbursement, in accordance with the provisions of law.

After the expiration of 30 days from the date of the passage of the assessing ordinance, as aforesaid, the mayor and council of said city, in regular session, determined the amount of the assessments remaining unpaid to be the sum of $421,258.77, and by resolution adopted on the 16th day of June, 1909, provided for the issuance of coupon bonds in accordance with the terms of the contract in the last-named amount, bearing date of April 1, 1909, and interest at the rate of 6 per cent. per annum from date, payable annually, and 10 per cent. per annum after maturity until paid, and divided said sum into ten equal installments as provided by statute. By the terms of the contract the paving company was to accept the street improvement bonds in payment for work done, the city was to pay the paving company for work and material furnished upon monthly estimates of the city engineer as the work progressed, provided that 10 per cent. of each of said estimates should be retained by the city until the work was completed and accepted. The paving company was

to purchase and pay par value for a certain portion of the street improvement bonds, amounting to 2½ per cent. of the aggregate amount, which was issued to pay the cost of engineering, appraisement, inspection, and other expenses incidental to carrying out the contract. Of the said bonds in the aggregate amount of $421,258.77, $10,235.57 represented that portion of the bonds issued to pay the cost of the engineering, etc., and the balance of $411,023.20 represented the amount of bonds to be received by the paving company in payment of its contract, when the mayor and the council accepted the same.

The said city, in accordance with the contract, did execute the bonds for the full amount, with interest coupons attached, and from time to time, upon estimates furnished by the city engineer and approved by the mayor and council, did deliver said bonds in installments with coupons attached to said paving company, for the full amount of said issue, of $421,258.77, of bonds and the said company did from time to time, coincident with the delivery of such installments, pay to the city the sum due it for said engineering and other expenses incident to carrying out the contract, and to the full amount of $10,235.57. The paving company, on or prior to December 2, 1910, sold and delivered the said bonds to the plaintiffs in error for a valuable consideration, who thereby became and are now the owners and holders thereof, except such portion of bonds and interest coupons as were paid to the said paving company as hereafter stated. That the said bonds maturing on September 15, 1909, in the sum of $42,-258.77, principal and interest coupons on the whole series of bonds which were due and payable on September 15, 1909, in the further sum of $11,339.99, and interest coupons on the whole residue of principal due and payable on September 15, 1909, in the further sum of $22,740, the said plaintiffs did not become the owners of, and the said sum was paid direct to the said paving company by the said city treasurer, prior to the 2d day of September, 1910, and all the said interest except approximately $10,000 was so paid to said paving company prior to November 1, 1910, and the money so paid out was the money collected as aforesaid by the county treasurer of said county, upon the first

installment of assessment so certified to him by the city clerk for collection as aforesaid, which bonds and coupons, so presented, surrendered, and paid, the said city treasurer did cancel and now retains the same. The second installment of bonds due and payable on September 15, 1910, was paid to plaintiffs. Thus bonds numbered consecutively from 1 to 85, inclusive, aggregating the sum of $84,258.77 principal, and all interest coupons on the entire issue of bonds due and payable September 15, 1910, and prior thereto, have been paid and none other.

On the 1st day of November, 1910, a final settlement was made between the paving company and the city for the work of improvement, and at such time the city held of said $421,258.77, bonds numbering 368 to 423, inclusive, aggregating $55,500, and also held the coupons to said bonds attached, of which coupons so attached $1,498.50 had matured and were due and payable on the 15th day of September, 1909, $3,330 had matured and was due and payable on the 15th day of September, 1910, and in addition to the said $55,500 and the said coupons as aforesaid, the said city held possession, conditionally, of certain coupons theretofore detached from bonds, numbering consecutively 291 to 296, inclusive, and 317 to 367, inclusive, and some others; the total so conditionally held aggregating $4,959. On November 1, 1910, the items remaining unpaid to the paving company under the contract were as follows: Ten per cent. on estimates amounting to $39,905.71; bonds for engineering, etc., expenses, $3,272.32; final estimate on completed work, $11,968.67; amount theretofore allowed on estimates but being less in the aggregate than one bond and for which no bond had been issued, $353.30—a total of $55,500 undelivered bonds due the company. All other bonds and coupons of said issue than these last above stated had been delivered to the company.

On the 1st day of November, 1910, in order to settle the differences existing between the paving company and the city, the following agreement was made and entered into:

"Be it resolved, by the mayor and councilmen of the city of El Reno, as follows: Section 1. That the city of El Reno deliver at once to the said The Cleveland Trinidad Paving Com-

pany all of the bonds and coupons now in its possession or re-
tained by it which the mayor, and council of said city have here-
tofore authorized the issue of for the purpose of paying for the
improvement to be made in said street improvement district No.
2.  Section 2.  That the Cleveland Trinidad Paving Company
shall pay to the city of El Reno the sum of fourteen thousand
five hundred forty-nine and 17-100 dollars ($14,549.17) being
part of the accrued interest on said bonds.  Section 3.  That the
delivery of said bonds to the Cleveland Trinidad Paving Com-
pany shall be made and accepted as in full payment, settlement,
and satisfaction of any and all sums due and owing to the Cleve-
land Trinidad Paving Company for all work done by it in the
performance of its aforesaid contract for improvements made in
said street improvement district No. 2, including any and all
claims for damages resulting from any act, neglect or default of
the city or its public officials which in any manner interfered
with the performance of said contract.  Section 4. That the pay-
ment by the Cleveland Trinidad Paving Company of the sum
of fourteen thousand five hundred forty-nine and 17-100 dol-
lars ($14,549.17) as aforesaid shall be made and accepted by
the city of El Reno as in full for the part of the accrued interest
upon the aforesaid bonds which the said city is or might be en-
titled to retain.  Section 5. That this resolution shall be in force
and effect from and after its passage, and approval by the mayor,
and its acceptance in writing by the said The Cleveland Trinidad
Paving Company, which acceptance by the Cleveland Trinidad
Paving Company shall be filed with the clerk of said city
within five (5) days from and after the passage thereof.  Passed
and approved this 1st day of November, 1910.  J. A. Labryer,
Mayor.  Attest: F. T. Stackpole, City Clerk.  Accepted Novem-
ber 2, 1910.  The Cleveland Trinidad Paving Company, by M.
F. Bramley, President."

Whereupon the city delivered to the paving company the
bonds and coupons held by it as aforesaid, on the 1st of Novem-
ber, 1910, and the paving company paid the city the sum of
$14,549.17.  The payments were effected as follows: The $55,-
500 bonds and coupons attached were forwarded by the city to
plaintiffs in error, with instructions to collect the said sum of
$14,549.17 from, and deliver the said bonds to, the said paving
company, and to forward said sum so collected, to wit, $14,549.17,
to the fiscal agency of the state of Oklahoma in the city and state
of New York, for credit of the city of El Reno to pay said street

improvement bonds and interest coupons, there presented for payment at maturity. The $14,549.17 was collected from the paving company, and forwarded to the fiscal agency, and the bonds were delivered to the paving company, and the money collected and forwarded to the fiscal agency was applied on the payment of bonds and coupons of said issue prior to the adoption of resolution of the mayor and council hereinbefore referred to. The detached coupons held by the city and delivered to the paving company were presented to the city treasurer and by him paid and canceled prior to the adoption of the resolution of the mayor and council hereinbefore referred to. On the 2d day of December, 1910, the mayor and councilmen in adjourned regular session adopted two resolutions, as follows:

"Whereas, there now remains in the hands of the city treasurer of the city of El Reno, Oklahoma, the sum of $14,549.77, the same being the amount of money received as the result of a settlement by and between the city council of said city and the Cleveland Trinidad Paving Company of Cleveland, Ohio, of the unearned interest on street improvement bonds in paving district No. 2, of El Reno, Oklahoma; and, whereas, the work of improving the streets and alleys is completed and accepted in said district No. 2, as shown by the records of the council proceedings November 1, 1910; and, whereas, the sum of $14,549.77 now remains on hand and properly belongs to the property owners of said paving district No. 2, as hereinafter set forth: Now, therefore, it is hereby resolved and ordered by the mayor and city council of the city of El Reno, Oklahoma: That the city clerk of the said city and state shall divide the sum of $14,549.77 by the total contract price, to wit, after deducting from the total contract price the amounts paid in full by the property owners in paving district No. 2, which property owners made settlement in full from this paving and got the benefits of a 10 per cent. discount or reduction thereon. That the same be and is hereby ordered prorated back to the owners of the lot or lots in said paving district No. 2, to wit: by multiplying the quotient so obtained by the above division as mentioned, by the total paving assessment against any lot or lots in said paving district No. 2, upon which settlement in full has not been made. After giving the said city clerk fifteen days from the date of the passage of this resolution to determine the proper amount to credit to each lot or lots as above provided, the owners of all lots entitled to a rebate under this resolution may file bills or claims for the

amounts due them in the manner and form of all other claims against said city are filed for allowance by the said city council and warrants therefor shall be drawn and issued in favor of the said lot owners on this special fund in the way and manner as provided for other claims against the said city. Passed and approved this 2d day of December, 1910. J. A. Labryer, Mayor. Attest: F. T. Stackpole, City Clerk. [Seal.]"

"Be it resolved by the mayor and council of the city of El Reno, Oklahoma, in council assembled: That, whereas, the county treasurer of Canadian county collected from various owners of lots in paving district No. 2, of the city of El Reno, certain penalties on account of the paving taxes in said district, to wit, 18 per cent. on the total assessment and interest from September, 1909, until the time of the payment of the same; and, whereas, only 7 per cent. on the said assessment are required to pay the paving bonds issued for the payment of the said district and the said excess properly belongs to the respective parties so paying the same: Now, therefore, be it resolved by the mayor and councilmen of the city of El Reno, Oklahoma: That the said excess of penalty be refunded to the respective parties paying the same before the sale of lots for delinquent paving taxes in said district in June, 1910, and that the holder of receipts therefor may present the same to the city clerk, and the said amount may be ascertained, and when so determined that warrants may be issued therefor on the penalty fund to such parties for the said penalties so determined. Passed and approved this 2d day of December, 1910. J. A. Labryer, Mayor. Attest: F. T. Stackpole, City Clerk. [Seal.]"

Said resolutions are in effect unmodified, unrepealed, and it is the intent of the city to exercise the authority therein conferred to pay out and disburse from said special fund the amounts named in said resolutions and for the purpose therein stated.

The penalties mentioned in the last resolution above on the first installment of assessment from September 1, 1909, to the time said first installment was collected by the county treasurer, amounts approximately to $7,500, and the excess of interest over and above 7 per cent. on the same installment for the same period of time, i. e., 11 per cent., amounts to approximately $4,583. By reason of the application of the said $14,549.17 to the payment of bonds of the series which matured September 15, 1910, and which were paid at the fiscal agency of the state of Oklahoma

in the city and state of New York, the assessment fund in the hands of the city treasurer of the city of El Reno now contains a like sum, which, had it not been for the payment of the said $14,549.17, by the fiscal agency, as aforesaid, would have been applied in payment of said matured bonds. There is no contest between the parties concerning the validity of the proceedings or any of them hereinabove referred to, on which the contract for the making of the said improvements, the said assessments, and the issue of bonds are based, and the validity of the contract, assessments, and series of bonds are likewise admitted by the parties.

The above facts were submitted to the trial court by the parties in an agreed statement. In addition to this, the plaintiffs submitted the deposition of Horton C. Rorick, one of the plaintiffs, in support of the allegation of damages and injury which plaintiffs, as owners of the outstanding bonds, might sustain by carrying into effect the resolution above set out. In addition to the above, the city offered evidence tending to show that the said sum of $14,549.77 belonged to the city of El Reno in its corporate capacity, and that the same was no part of the special assessment fund. Upon these facts the court found that plaintiffs were not entitled to the relief prayed for and dismissed their petition, and they bring error and predicate the same on the following assignments, to wit: (1) That the orders dissolving the temporary injunction and the final judgment are not sustained by sufficient evidence and are contrary to law; and (2) error of law occurring at the trial in the admission of certain evidence.

It will be observed that there are two items over which this controversy arose, viz., $7,500, derived from the penalty of 18 per cent. on delinquent assessments, and $14,549.77 accrued interest on the bonds, or first installment of assessment, accumulated thereon while a controversy existed between the city and paving company, and before the bonds representing the payment of installment of the work performed during said controversy had been delivered to the paving company, and which said latter sum was ascertained and determined by the parties through the final settlement, and which was part of the consideration

therefor. The city, after making final settlement with the paving company, found itself in the possession of these two sums, and the same having been derived from special assessments, for a particular and specific purpose, and not in any wise belonging to the city as a municipality, but it holding the same as a trustee, or stakeholder, attempted, by the two resolutions adopted December 2, 1910, to return the same to the property owners, who had paid it. This attempt the plaintiffs objected to, and this threatened disbursement presents the question in controversy. At the time the two last-mentioned resolutions were adopted, the plaintiffs were the owners of all bonds due on September 15, 1910, and all subsequent installments of bonds and interest coupons, and no further payments, either of interest or principal, were due out of said special assessment fund until September 15, 1911.

Plaintiffs contend that the special assessment fund is a trust fund dedicated, pledged, and appropriated by statute to the payment of the bonds and interest, and can be used for no other purpose and cannot lawfully be diverted from said purpose, and that the city of El Reno, as a municipal corporation, has no right or interest therein, except as trustee, or stakeholder, and no power to use or expend the same except as such trustee for the payment of the bonds and interest thereon as provided by law, and they cite Sess. Laws 1907-08, p. 175 (Comp. Laws 1909, sec. 727; Rev. Laws 1910, sec. 642), a portion of which reads as follows:

"* * * And the amounts so collected and paid to the city treasurer shall constitute a separate special fund to be used and applied to the payment of such bonds and the interest thereon and for no other purpose."

That such money, when collected from the various property owners, becomes a trust fund, to be used only for the particular purpose for which it was raised, and especially until all bonds and interest and other legal charges against said fund have been paid, there can be no doubt. See *City of El Reno v. Cleveland Trinidad Paving Co.*, 25 Okla. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650; *Ritterbusch, Co. Treas., v. Havinghorst, City Treas.*, 29 Okla. 478, 118 Pac. 138; *Shultz v. Ritterbusch*, 38

Okla. 478, 134 Pac. 961. But, conceding this to be true, it does not necessarily follow that the sums in question are clothed with that characteristic. The whole scheme of the statute is to raise only such sum as will pay the actual expense of the improvement. It was not designed to create a surplus at any time in this fund or any of its installments. Each year's assessment is intended to take care of one installment of principal and interest and no more. To be sure, this sum cannot be limited to an exact amount. From the nature of the business there will always be a slight discrepancy, amounting, perhaps, to a few dollars, or possibly a few hundred dollars, but the assessments for this purpose are made to bear 7 per cent. interest, while the bonds bear only 6 per cent., and this additional 1 per cent. ought, and in all proba-bility will, always provide more than the necessary amount to meet any possible deficiency. Each lot and parcel of land in the proposed improvement district must bear its equal share in the total cost. It is not required to bear more. Neither the city nor the bondholder can require any property owner to pay one penny more than the sum legally assessed against his property. If A. owns property in the district, he must pay all the assess-ments levied against his property, and if, for any reason, he fails, neglects, or refuses to do so, the statute imposes a penalty of 18 per cent. per annum on the amount of his tax and also pro-vides an easy and speedy method for selling the same for the pur-pose of compelling payment. But notwithstanding A. makes de-fault in the payment of all or any part of his assessment, neither the city, nor the bondholder, nor any one else, can exact a single penny from B., who also owns property in the improvement dis-trict, for the purpose of making up A.'s deficiency. The statute provides ample remedy in such case, and A.'s property is pledged, by law, to the payment of his share in the cost of the improve-ment. So, also, if for any reason A. is required to or has paid into said fund more tax than he owes, or than has been legally levied against his property, the surplus belongs to him, and not to the municipality, the district, or the bondholder. These prin-ciples are so fundamental and so simple that there ought not to be any difference, in the minds of reasonable men, concerning them.

The sums in controversy in this case are made up of money exacted, innocently to be sure, from the property owners in improvement district No. 2, in the city of El Reno. This money was collected and taken from them without any returning consideration. They received no paving for it. It was an excess amount collected as it was under color of law, but by reason of a miscalculation, a mistake, nothing more. The first and second installments of the special assessment had already been paid when this amount was returned to the city by the contractor, who had been overpaid, and all subsequent installments have been amply provided for by law. These sums, therefore, are not part of the trust fund created by statute and do not possess any such characteristic. If it were necessary, in order to pay bonds or interest, that this sum be retained, it would present a different question; but such is not the case. In equity these sums should be prorated among the property owners of said district. They belong to them and to no one else. No one has any lien thereon, nor have plaintiffs any interest therein direct or remote. They will not be injured by the return of this money to the property owners, for, no matter how long a period of time the installments extend over, this money would never be used to pay either bonds or interest; other, and ample, provision has been made to meet all these obligations of the improvement district, and if these sums are retained by the city treasurer, at the time of the final payment of the last series of bonds, it will still remain in his hands unused and wholly unnecessary for the purpose which plaintiffs contend for it. Plaintiffs, as holders of the bonds, have no greater rights than those given them by statute. The method of payment of the installments was provided by statute long before the issuance of the bonds, and the statute became and is yet a part of the contract. No attempt is being made by the property owners, the city or any one else, to vary, alter, change, or modify in any wise the statutory method of payment, and until such attempt is made they ought not complain. It must not be forgotten, in this connection, that at the time this suit was commenced all bonds and interest due had been fully paid; no other payment would be due until Septem-

ber 15, 1911; until this 1911 assessment was collected there was nothing in the hands of the city treasurer in which plaintiffs would have any interest. If the sums in controversy were derived from a payment of assessment of which the installment of bonds and interest had not been paid, then plaintiffs undoubtedly would have an interest therein; but, as has been seen, such is not the case.

As has well been said by counsel for defendants in error:

"Under every contingency which may arise, provision is made in the statute for the payment of every bond and every coupon out of assessments due in the same year the bonds and coupons are due, and plaintiffs can have a vested interest in no other moneys. Plaintiffs have not shown that they will suffer any injury. What injury can they suffer? Their bonds and coupons due have been paid; ample provision is made in the law for the payment of bonds and coupons due in the future. They can be injured in no other way than by the loss of the amount invested in the bonds. Plaintiffs cannot come into court and demand equitable relief for the mere purpose of increasing the speculative value of their bonds. They cannot claim more security than the law gives them. How can they be injured by the distribution of money against which they have no claim, money which can never be theirs, money which no one owes to them in any way whatever? They purchased these bonds having in contemplation no other security than that·provided by law, viz., the special assessments against the property abutting along the improvement. How, then, can they be injured by any act which in no way diminishes or affects this security? They purchased these bonds contemplating that only the money in the amount of the assessments would each year be placed in this fund, with which, each year, one-tenth of the bonds and the interest would be paid. How can they be injured by any disposition of money derived from some other source? The distribution of this $14,549.77 in no way lessens the amounts to be paid upon the assessments. These have been paid in and will be paid in and used to redeem one-tenth of the bonds and the interest each year, in the manner and amounts provided by law, and as was contemplated by the parties at the time the bonds were purchased by plaintiff. The plaintiffs have and will continue to have, irrespective of what is done with this $14,549.77, everything which the law provides they should have. What interest, then, can they claim in anything more, and what irreparable injury can·they

suffer from the disposition of something else? How can they suffer from the loss of something they have never had?"

The question as to the right of the city, as a municipality, to these sums, is not properly before us; but it might not be amiss to say that in our opinion it belongs, in equity at least, to these property owners who, under the color of law, were compelled to pay it, and not to the city. The city is the agent of both the property owners and the paving company in the transaction, and in this particular respect occupies the position of stakeholder. Until the bonds and interest have been fully paid, it can have no interest in any part of the special assessment fund, and then only such interest as may be given by statute, and at the time this suit was filed there was no statute dealing with the subject; but in these particular sums we do not see how it can possess any interest whatever.

This, therefore, brings us to the real question in this case: Did the lower court err in dissolving the temporary injunction and in refusing to grant perpetual injunction? Obviously not. For the reasons hereinabove set out, it appears that plaintiffs have a full, complete, and adequate remedy at law for any injury they may suffer by reason of the wrongful acts or omissions of the city to properly provide an ample fund to care for all outstanding bonds and interest. All payments have been made as contemplated by statute. No apprehension or fear that future payments will not be made has been suggested by plaintiffs, and none could properly be made, for no presumption exists that public officers will ignore the plain provisions of statute or refuse to perform their official duty. Plaintiffs have not shown, nor can they show, that they have been in any wise injured, or that they are likely to be injured, by the threatened disbursement of these sums. The law does not contemplate any duty on the part of the city, outside of statutory provisions, looking to the speculative enhancement of the market value of these bonds. Besides, this question was submitted to the court as a fact and resolved against the contentions of plaintiffs, and we have heard of no sufficient reason to warrant an interference with the judgment.

From a careful analysis of the whole case, after due consideration of plaintiffs' claims, we cannot see where the lower court erred in its judgment. It therefore becomes unnecessary to give consideration to the other questions raised collaterally, in the briefs of the parties.

For the reasons given, the judgment of the district court of Canadian county should be affirmed.

By the Court: It is so ordered.