## CHICAGO, R. I. & P. RY. CO. v. EXCISE BOARD OF CANADIAN COUNTY.

No. 24603.    Sept. 19, 1933.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for plaintiff in error.

S. T. Roberson, Co. Atty., J. N. Roberson, City Atty., and Ray Bannister, for defendant in error.

McNEILL, J. This is an appeal from the judgment of the Court of Tax Review rendered against the plaintiff in error, the Chicago, Rock Island, & Pacific Railway Company, denying its protest against the action of the excise board of Canadian county in failing to use the sum of $10,-972.33, cash on hand in the city's funds known as a special improvement guaranty fund, in reducing the tax levy for sinking fund for the city of El Reno for the fiscal year 1932-1933. For said fiscal year the excise board made no general fund levy, but made a sinking fund levy of 15.07 mills.

At the trial of the case, the parties entered into a stipulation as follows:

"It is stipulated by the parties to this action that the fund protested was derived from penalties and interest on special assessments in district No. 2, El Reno; that no part of said fund came or was derived from, ad valorem taxes; that this fund was placed in the street repair fund and remained there until 1927, when by amendment of the charter of the city of El Reno authorizing the city to establish the special improvement guaranty fund, this special improvement guaranty fund was created, being a part of the fund derived from the penalties and interest after all payments of bonds and money due by reason of said improvement had been paid in full; that the protestant had no property in this particular paving district and has never paid in any manner any part of said fund; that the charter amendment provided that we might establish this special fund and this special fund was used, and has been used from time to time as a revolving fund for temporary financing special improvements, the purpose of this being in dealing with contractors for the improvements of the streets that we advertise for bids, cash and bonds, and by reason of this, the property owners within the improvement district are enabled and do have their improvements much cheaper than they otherwise could. * * *

"It is further agreed that at the beginning of the fiscal year involved the sum of $10,972.33 was on hand and is set up in the budget under special improvement guaranty fund; that said sum was and is unincumbered, there being no outstanding claims against same, nor were there any such claims incumbered at the beginning of the fiscal year."

Section 25 of chapter 173, S. L. 1923 [O. S. 1931, sec. 6236], relating to streets and alley improvement and assessments therefor, contains the following:

"In case any installment or interest is not paid when due, the installment so matured and unpaid and the unpaid interest thereon shall draw interest at the rate of twelve per cent. (12%) per annum from maturity until paid, except as hereinafter otherwise provided. All assessments and interest, whether collected by the city or town or the county treasurer, shall be paid to the city or town treasurer, who shall keep the same in a separate special fund for the purpose of paying the bonds and interest coupons thereon, issued against such assessments, and after the payment of all bonds and interest thereon, any surplus remaining in said fund shall be used for the purpose of repairing and maintaining any improvement for which assessments have been levied, and for no other purpose whatsoever."

Section 7, art. 6, of the charter of the city of El Reno contains the following:

"Section 7. The city of El Reno shall have the power to establish and create a special improvement guarantee fund to be used to guarantee the payment when due of all improvement bonds issued according

to this amendment, and shall have the power to appropriate into such fund any balance remaining in any fund of a district heretofore constructed, and which balance is not needed for the payment of any bonds or interest thereon remaining unpaid in such district, and any similar fund that may accrue in the future, together with the funds provided for in section five (5) of this article. Such special improvement guarantee fund may be invested in any security provided by law for the investment of sinking fund of the city of El Reno, and may also be used as a revolving fund for the investment in special improvement warrants issued in payment for labor or material during construction of any improvement district constructed hereunder, under such rules and restrictions as the governing body of this city shall by ordinance provide."

It appears that in 1927, the city of El Reno enacted an ordinance vitalizing said charter provision, prescribing procedure in improvement districts, and creating a "special improvement guarantee fund"; that the $10,972.33 here involved is a part of the surplus accumulated from penalties and interest upon special assessments in district No. 2 in the city of El Reno, a street paving improvement district, over and above what was required to pay all bonds and debts against said paving district. Under the provisions of said section 25, chapter 173, S. L. 1923 [O. S. 1931, sec. 6236], these funds were required to be placed in the street paving repair fund, to be used for the purpose of repairing and maintaining improvements for which assessments had been levied. This fund was established under the authority of said ordinance and charter provision as a revolving fund in temporarily financing street improvements in said city, and thereafter reimbursed to its full amount from the proceeds of special assessments in the improvement district that are paid in cash and the sale of bonds issued against the improved property, so that it stands available for use in the street paving repair fund, the fund from which it was derived. The excise board of Canadian county did not consider the same in making its levy of taxes for said fiscal year.

It is the contention of the plaintiff in error that this money belongs to the city of El Reno, and should be considered cash on hand by the county excise board in levying taxes for the fiscal year, and that as there was no levy made for the general fund, the said sum should be used for the purpose of lowering the sinking fund levy.

It contends that the said provision of the city charter of El Reno is void in that it violates section 30 of article 10 of the Constitution of Oklahoma and section 9699, C. O. S. 1921 [O. S. 1931, sec. 12678].

Said provision of the Constitution is as follows:

"The Legislature shall require all money collected by taxation, or by fees, fines, and public charges of every kind, to be accounted for by a system of accounting that shall be uniform for each class of accounts, state and local, which shall be prescribed and audited by authority of the state."

Section 9699, C. O. S. 1921 [O. S. 1931, sec. 12678], provides that any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, shall be deducted from the estimated needs of the municipality.

The defendant in error contends that, as the money here involved was not derived from ad valorem taxes, but from penalties and interest whereby a surplus from paid-up assessments in improvement districts was created after all the obligations against the improvement district had been paid, it could not be placed in the sinking fund for the purpose of reducing ad valorem taxes; that the excise board has no authority to divert this money paid in by a certain class of citizens for the specific purpose for the improvement of their property, and use it to lower ad valorem taxes.

The money in question does not belong to either the general fund or the sinking fund. In the case of Protest of Bledsoe et al., 161 Okla. 227, 17 P. (2d) 979, this court said:

"7. Neither estimated receipts from automobile taxes nor a balance on hand from such receipts may be considered in determining the rate of ad valorem taxation for a city general fund, for the reason that receipts from that source are required to be credited to and used in the street and alley fund (chapter 167, Session Laws 1925), but if there are included in the estimate for general fund purposes items for street and alley purposes and an ad valorem tax levy is made for general fund purposes which includes street and alley purposes, estimated income and the balance on hand from automobile taxes should be considered in determining the rate of that ad valorem tax levy in order that the rate

of ad valorem tax levy for general fund purposes may not be in excess of the needs of the municipality for street and alley purposes.

"8. The balance on hand at the close of a fiscal year in a street and alley fund derived from the proceeds of automobile taxes may not be transferred to the general fund of a municipality, but should remain in the street and alley fund of the municipality. That balance should be accounted for as required by the provisions of section 30, article 10, of the Constitution, and section 9697, C. O. S. 1921."

A special assessment is not a tax in the general acceptation of the term. City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640.

A fund created by a city in collecting interest and penalties upon delinquent special assessments in a street improvement district, in excess of what is necessary to pay the bonds for which the assessments were levied, in the absence of a statute or ordinance directing the disposition of same, is not the property of the city, but such a fund is a trust fund held by the city for the landowners in the assessment district. In McQuillin's Municipal Corporations, vol. 5, sec. 2312, it is said:

"Landowners paying special assessments to a fund to pay bonds issued to cover the actual cost and expenses of the improvements in excess of the sum required, due to miscalculation or mistake, are, in equity, justly entitled to have such excess refunded to them, each landowner to receive the excess paid by him, that is, the excess should be prorated among the property owners, as it may appear that each has paid. Such money, when collected from the several property owners, becomes a trust fund, to be used only for the purpose specified, and when the bonds and interest and other legal expenses chargeable against such fund has been satisfied, the balance belongs to the landowners. Each lot or parcel of land in the improvement district must bear its equal share in the total cost and no more."

In the case of Spitzer v. City of El Reno, 41 Okla. 430, 138 P. 797, involving the disposition of just such funds as here involved, this court said:

"That such money, when collected from the various property owners, becomes a trust fund, to be used only for the particular purpose for which it was raised, and especially until all bonds and interest and other legal charges against said fund have been paid, there can be no doubt. See City of El Reno v. Cleveland Trinidad Paving Co., 25 Okla. 648. 107 P. 163, 27 L. R. A. (N. S.) 650; Ritterbusch, Co. Treas.,

v. Havinghorst, City Treas., 29 Okla. 478, 118 P. 138; Shultz v. Ritterbusch, 38 Okla. 478, 134 P. 961. But, conceding this to be true, it does not necessarily follow that the sums in question are clothed with that characteristic. The whole scheme of the statute is to raise only such sum as will pay the actual expense of the improvement. It was not designed to create a surplus at any time in this fund or any of its installments. Each year's assessment is intended to take care of one installment of principal and interest and no more. To be sure, this sum cannot be limited to an exact amount. From the nature of the business there will always be a slight discrepancy, amounting, perhaps, to a few dollars, or possibly a few hundred dollars, but the assessments for this purpose are made to bear 7 per cent. interest, while the bonds bear only 6 per cent., and this additional 1 per cent. ought, and in all probability will, always provide more than the necessary amount to meet any possible deficiency. Each lot and parcel of land in the proposed improvement district must bear its equal share in the total cost. It is not required to bear more. Neither the city nor the bondholders can require any property owner to pay one penny more than the sum legally assessed against his property. If A. owns property in the district, he must pay all the assessments levied against his property, and if, for any reason, he fails, neglects, or refuses to do so, the statute imposes a penalty of 18 per cent. per annum on the amount of his tax and also provides an easy and speedy method for selling the same for purpose of compelling payment. But notwithstanding A. makes default in the payment of all or any part of his assessment, neither the city nor the bondholder, nor any one else, can exact a single penny from B., who also owns property in the improvement district, for the purpose of making up A.'s deficiency. The statute provides ample remedy in such case, and A.'s property is pledged by law, to the payment of his share in the cost of the improvement. So, also, if for any reason A. is required to or has paid into said fund more tax than he owes, or than has been legally levied against his property, the surplus belongs to him, and not to the municipality, the district, or the bondholder. These principles are so fundamental and so simple that there ought not to be any difference, in the minds of reasonable men, concerning them.

"The sums in controversy * * * are made up of money exacted, innocently to be sure, from the property owners in improvement district No. 2, in the city of El Reno. This money was collected and taken from them without any returning consideration. They received no paving for it. It was an excess amount collected as it was under color of law but by reason of a miscalculation, a mistake, nothing more. The first and second

installment of the special assessment had already been paid when this amount was returned to the city by the contractor, who had been overpaid, and all subsequent installments have been amply provided for by law. These sums, therefore, are not part of the trust fund created by statute and do not possess any such characteristic. If it was necessary, in order to pay bonds or interest, that this sum be retained, it would present a different question; but such is not the case. In equity these sums should be prorated among the property owners of said district. They belong to them and to no one else."

The money involved in the case of Spitzer v. El Reno, supra, was an excess sum derived from assessments, interest, and penalties paid by property owners in the special assessment district as in the instant case. The funds involved in this action are not trust funds held for the benefit of the general taxpayers of El Reno or for said city of El Reno. Such funds were not derived from taxation, and by said statute are not made the property of said city except for the special purposes set forth in said statute. By the terms of said chapter 173, S. L. 1923, said funds were required to be placed in the street repair fund and used in repairing streets which had been improved. These funds should be used for the benefit of those for whom they are held in trust.

In 44 C. J. sec. 3433 (p. 814) it is said:

"Where a property owner has paid an excessive assessment, the excess or surplus belong to him and not to the municipality, the improvement district, or the bondholders; and it may and should be returned to him. In some jurisdictions, however, where an excessive assessment has been voluntarily paid, the excess cannot be recovered back, unless the case falls within the operation of a valid mandatory statute. A charter or statutory provision for a return to the property owners of the excess, where a larger sum has been collected from them than is necessary for the construction of the improvement, or for the payment of the whole cost and expenses thereof, is not applicable where there is no 'excess' within the meaning of the statute. While penalties and interest may give rise to an excess within the meaning of charter or statutory provisions for the refunding thereof, an excess so arising should not be paid exclusively to the persons who paid the penalties and interest, but should be distributed among the property owners in proportion to the respective amounts of their original valid assessments."

In the case of Miller v. City of Seattle, 50 Wash. 252, 97 P. 55, it was said:

"Seattle city charter, art. 8, sec. 17, provides that any funds remaining in the treasury belonging to the fund of any local improvement district, after payment of the whole cost and expense of the improvement, shall be refunded, on demand, to the amount of such overpayment, and, if there shall be such an excess in the assessment of any person who shall not have paid his assessment, a rebate shall be allowed. Held, that where an excess remained in a special assessment fund, after satisfaction of all charges against it, by virtue of the collection of penalties and interest, such excess belonged to all who had contributed to the fund in proportion to the amount of their original valid assessment, and not to a delinquent property owner, who paid in nearly the whole balance after the cost of the improvement, etc., had been paid."

If the funds such as are here involved could by statute or ordinance be required to be returned to the property holders in the improvement district, there seems no sound reason why a statute and ordinance requiring the same to be used for their benefit such as are now being considered should not be valid. Such fund should be considered as a trust fund held by the city for the benefit of the landowners in the improvement district.

Judgment affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, BAYLESS, and BUSBY, JJ., concur. ANDREWS, OSBORN, and WELCH, JJ., absent.